# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2459

_____

United States of America,　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　 *
　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　　*　Northern District of Iowa.
Luke Keller,　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　 *

_____

Submitted:　May 9, 2005
　　　Filed:　July 5, 2005

_____

Before WOLLMAN, BRIGHT, and BYE, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Luke Keller appeals from the sentence imposed upon him by the district court[1] following his guilty plea for engaging in a continuing criminal enterprise (Count 2), a violation of 21 U.S.C. § 848, and using a firearm in a crime of violence and drug trafficking crime (Count 5), a violation of 18 U.S.C. §§ 2 and 924(c).  We affirm.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

## I.

Between October 2000 and June 2002, Keller and several associates engaged in a drug conspiracy in Minnesota and Iowa in which they distributed more than 27,600 grams of a mixture containing methamphetamine, 5,800 grams of "ice" methamphetamine, 20,000 grams of cocaine, 200 grams of ecstacy, and 1,000 kilograms of marijuana. The marijuana equivalent of the combined drug quantity exceeded 177,000 kilograms. Keller received between $20,000 and $30,000 per month from his involvement in the drug ring.

At some point in the conspiracy, Keller and his associates kidnapped at gunpoint Patrick Carlone, one of Keller's drug dealers who owed him money. After taking Carlone to Keller's basement, which was covered with tarps, Keller struck Carlone in the forehead with a gun, causing him to bleed. Keller's associates then kicked Carlone. After the beating, two of Keller's associates wearing rubber gloves cleaned the carpet with a wet-dry vacuum.

In May 2002, Greg Molitor, Jess Ballhagen, and Chris Witter stole a substantial quantity of cash and drugs from Keller's stash house. Keller initially suspected Brian Anderson of the theft. According to the presentence investigation report (PSR), Keller, aware that Anderson was coming to his house, spread a tarp over his basement floor to protect the floor from blood. When Anderson arrived, Keller took him to the basement, where Keller and two associates beat him. After concluding that Anderson was not involved in the theft, Keller shifted his suspicions to Witter. Keller brought handguns from Minnesota to Iowa and provided them to his associates, who kidnapped Witter at gunpoint. A witness observed the abduction and contacted police, who apprehended Keller's associates before they harmed Witter.

Keller pled guilty to Counts 2 and 5 pursuant to a plea agreement, whereupon the district court sentenced him to 437 months' imprisonment.

-2-

**II.**

Keller asserts for the first time on appeal that the government breached the plea agreement by introducing Keller's proffer at sentencing. We review *de novo* issues pertaining to the interpretation and enforcement of a plea agreement. United States v. DeWitt, 366 F.3d 667, 669 (8th Cir. 2004).

Keller's breach argument relates to the base offense level on Count 2. Under the terms of the plea agreement, Keller's "base offense level [was] 38 pursuant to USSG § 2D1.5(a)(2)." Plea Agreement at 7. The prosecutor at no time argued to the contrary. In fact, when asked about the base offense level by the district court, the prosecutor responded that "with regard to the base offense level, we're bound by our plea agreement." Sen. Tr. at 165. The prosecutor noted that although the plea agreement was not binding on the district court, "it is binding on us, so I have nothing to add to [the issue of the base offense level]." Id.

Prior to imposing sentence, the district court emphasized that, unlike the prosecutor, it was not bound by the stipulation to the base offense level of thirty-eight. Id. at 13. The district court concluded that:

> The base offense level involved a minimum of 177,278.39 kilograms of marijuana equivalent drugs. Under 2D1.5(a)(1), the base offense level is computed by adding four levels, plus the offense level from 2D1.1, and, therefore, applying the guideline, the base offense level is then forty-[two].

Id. at 184-85. Keller ignores the prosecutor's and the district court's statements and focuses instead on the prosecutor's introduction into evidence of Keller's proffer statement. Keller infers that the prosecutor must have offered the statement to

-3-

support a base level offense of 42 in contravention of the plea agreement. The record is devoid of any evidence supporting Keller's inference.[2]

## III.

Keller challenges on appeal four sentencing enhancements based on facts not found by a jury beyond a reasonable doubt. Three of these enhancements apply to his sentence on the Count 2 conviction: a two-level increase for restraint of a victim during the offense, a two-level increase for obstruction of justice, and a two-level increase for sanctioning the use of violence.[3] The fourth challenged enhancement is the district court's 24-month increase to the mandatory minimum under 18 U.S.C. § 924(c) on the Count 5 conviction based on its finding that Keller brandished (rather than simply possessed) a firearm. Although the district court used the preponderance of the evidence standard to determine each of the four enhancements to which Keller objects, those enhancements are not necessarily constitutionally infirm under United States v. Booker, 125 S. Ct. 738 (2005).

### A.

We have recently held that a fact in a PSR not specifically objected to is a fact admitted by the defendant for purposes of Booker. See United States v. McCully, 407 F.3d 931, 933 (8th Cir. 2005). Further, sentencing enhancements can be supported by admitted acts and omissions that were ". . . committed, aided, abetted, counseled,

---

[2]The district court, in fact, could have arrived at a base offense level of 42 independent of the proffer statement. See infra, note 3.

[3]Keller also alleges that the district court calculated the base offense level on Count 2 using a preponderance of the evidence standard. Keller Br. at 7-8. Keller, however, stipulated in his plea agreement that he and his co-conspirators distributed more than five kilograms of ice methamphetamine, which results in an offense level of 38 under section 2D1.1(c)(1) of the guidelines. The district court increased the base offense level to 42 pursuant to section 2D1.5(a)(1). Accordingly, the district court's calculation of the base offense level did not involve factual findings.

commanded, induced, procured, or willfully caused," and include "reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1).

The district court based its enhancement for restraint of a victim on section 3A1.3 of the guidelines, which provides that "[i]f a victim was physically restrained in the course of the offense, increase by 2 levels." Physical restraint means "the forcible restraint of the victim such as by being tied, bound, or locked up." Id. at §1B1.1, commentary application notes at ¶1(K). The PSR indicates that two of Keller's associates tied up Carlone after Keller beat him, that Carlone was tied to "a lawn chair with zip ties to the lawn chair cutting off circulation to [his] legs," and that Carlone was locked in a closet and tied up for three to four days. PSR at ¶¶76, 77, 78. Keller's sole objections to these statements are that he "was not involved in" the lawn chair restraint and that he "never locked [Carlone] in a closet." Objections to PSR at 3. Keller, however, does not dispute that any of these acts took place, and he does not deny knowledge of the acts, which were clearly related to his criminal enterprise. We conclude that the facts in the PSR, which are admitted for Booker purposes, justify the district court's enhancement for restraint of a victim.

The district court premised its enhancement for sanctioning violence on section 2D1.5, note 2, which provides that "[i]f as part of the [continuing criminal] enterprise the defendant sanctioned the use of violence . . . an upward departure may be warranted." The PSR indicates that Keller punched and kicked Anderson and that he hit Carlone in the head with a gun. PSR at ¶¶64, 76. These facts, which Keller does not contest, support the district court's enhancement based upon Keller's sanctioning of violence.

B.

The district court increased Keller's sentence on Count 5 based on its finding that Keller brandished a firearm in a crime of violence and drug trafficking crime.

See 18 U.S.C. § 924(c).[4]  The Supreme Court has concluded that such a judicial finding does not implicate constitutional concerns:

> Basing a 2-year increase in the defendant's minimum sentence on a judicial finding of brandishing does not evade the requirements of the Fifth and Sixth Amendments. Congress simply took one factor that has always been considered by sentencing courts to bear on punishment and dictated the precise weight to be given that factor.  That factor need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt.

Harris v. United States, 536 U.S. 545, 568 (2002) (internal quotes and citation omitted).  Accordingly, Keller's challenge to this aspect of his sentence is unavailing.

## C.

The enhancement for obstruction of justice is not supported by undisputed statements in the PSR.  See Objection to PSR at 3 ("Defendant objects to any inference that he obstructed justice.").  Accordingly, we address Keller's objection to this enhancement in light of Booker and United States v. Pirani, 406 F.3d 543 (8th Cir. 2005) (en banc).  Because Keller did not raise a constitutional challenge to the enhancement at sentencing, we conduct plain error review under the four-part test of

---

[4]The district court made ". . . the specific finding by the preponderance of the evidence that [Keller's associates] brandished firearms during the abduction of Witter" and that "[t]he Witter kidnapping was part and parcel of drug activity and continuing criminal enterprise."  Sen. Tr. at 189.  The district court also found that Keller could be "held responsible for brandishing weapons under several theories." Id. at 188.  The undisputed fact that Keller struck Carlone with a firearm provides separate justification for the district court's finding.  See 18 U.S.C. § 924(c) (defining brandish as "with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person").

United States v. Olano, 507 U.S. 725 (1993). Pirani, 406 F.3d at 549. Pursuant to that test, before we can correct an error not raised at trial, "there must be (1) error, (2) that is plain, and (3) that affects substantial rights. Johnson v. United States, 520 U.S. 461, 466-67 (1997). If all three conditions are met, we may remedy the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

The enhancement for obstruction of justice was erroneous in light of Booker because it was imposed on the basis of judge-found facts in a mandatory guidelines regime. See Pirani, 406 F.3d at 551. In these circumstances, the first two Olano factors are satisfied. See id. at 550. Whether the error affected Keller's substantial rights is another matter. To satisfy this factor, "the defendant must show a 'reasonable probability,' based on the appellate record as a whole, that but for the error he would have received a more favorable sentence." Id. at 552.

In calculating Keller's offense level on Count 2, the district court began with a base offense level of 42, subtracted three levels for acceptance of responsibility, and added two levels each for victim restraint, sanctioning violence, and obstruction of justice. Although these adjustments resulted in an offense level of 45, the district court sentenced Keller at an offense level of 43, the maximum level under the guidelines. Removing the two-level enhancement for obstruction of justice merely reduces Keller's offense level from 45 to 43, the same level at which he was sentenced. Accordingly, Keller is unable to demonstrate that he was prejudiced by the enhancement for obstruction of justice.

We also note that nothing in the record suggests that the district court would have sentenced Keller to a lighter sentence had it been operating under an advisory guidelines regime. To the contrary, the district court opined that:

This is the most violent drug case that I have heard as . . . a Federal Court judge, and in nine years on the State bench, I never heard of any conduct like I have heard in this case. It's very disturbing, whether it was an isolated incident or an ongoing practice.

Sen. Tr. at 191. The district court also noted that:

In deciding where to sentence the Defendant within the range, I considered the nature and circumstances of the offense and the history and characteristics of the Defendant. In addition, the sentence was imposed to afford adequate deterrence to criminal conduct and protect the public.

Id. at 212. In light of these comments, Keller has not demonstrated a reasonable probability of prejudicial error.

## IV.

Keller's counsel contended at oral argument that the district court erroneously calculated Keller's 25% reduction for substantial assistance, which applied only to Keller's life sentence on Count 2. The district court considered "the United States Sentencing Commission number of 39 years as a life sentence in this case," id. at 210, and calculated Keller's sentence on Count 2 to be 353 months. Keller's counsel suggests that the 25% reduction should have resulted in a sentence of 351 months rather than the 353 months calculated by the district court. Although a 25% reduction of 39 years (468 months) results in a sentence of 351 months, the sentencing transcript makes clear that the district court's reference to "39 years" was an approximation and that its precise starting point was 470 months, not 468 months. See id. at 208 ("United States Sentencing Commission says 470 months, which would be 39.16 years.").[5] A 25% reduction of 470 months results in a sentence of 352.5

_____

[5]The 470-month figure is taken from the 2001 Sourcebook of Federal Sentencing Statistics, United States Sentencing Commission, Appendix A ("Life

months, which the district court rounded upward to 353 months. Neither this calculation nor its starting point was in error.

The sentence is affirmed.

BRIGHT, Circuit Judge, dissenting

I would send this case back for resentencing, to allow the trial judge to consider adopting the base offense level of thirty-eight that the parties stipulated to in the plea agreement.

The district court was bound by mandatory sentencing guidelines, and the facts stipulated to in the plea agreement required a base offense level of forty-two. There was thus a contradiction between the level that the government and Keller agreed upon and the statutorily mandated level. The court adopted the statutorily mandated level.

Now that the Supreme Court has held that the guidelines are advisory rather than mandatory, United States v. Booker, 125 S. Ct. 738 (2005), the district court would be at liberty to adopt the lower base offense level that the government and Keller agreed upon. Our ordinary Booker plain error analysis, see United States v. Pirani, 406 F.3d 543 (8th Cir. 2005), does not apply here. This case – in which the court was prevented by mandatory guidelines from giving effect to a plea agreement – is distinguishable from Pirani.

---

sentences are assigned a prison length of 470 months, based on U.S. Census Bureau average life expectancy by age of federal defendants at sentencing."). See Sen. Tr. at 208 and Gov't Supp. Sen. Mem. at 2.

The district court should be given the opportunity to give effect to the plea agreement.

For this reason, I respectfully dissent.

_____