# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2454
No. 08-2986

_____

United States of America,     *
                *
    Appellee,      *
                *  Appeals from the United States
  v.            *  District Court for the
                *  Western District of Missouri.
Joseph Pulliam,       *
                *
    Appellant.     *

_____

Submitted: January 16, 2009
Filed: May 28, 2009

_____

Before LOKEN, Chief Judge, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

A jury found Joseph Pulliam guilty of being a felon in possession of firearms and ammunition, possession of methamphetamine, and possession of marijuana, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and 21 U.S.C. § 844(a). The district court[1] sentenced Pulliam to 180 months' imprisonment on each count, to run concurrently. Pulliam argues that the government withheld Brady material warranting a new trial and that the district court improperly enhanced his sentence by finding that

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

a prior conviction for unlawful use of a weapon qualified as a "violent felony." We affirm.

I.

On November 22, 2006, Pulliam met with his parole officer and declined to submit to a drug test because, as he explained, he knew it would test positive for methamphetamine. After Pulliam left, his parole officer contacted Corporal Shannon Crouch of the Missouri State Highway Patrol, informed him of Pulliam's admitted condition, and provided a description of Pulliam's vehicle and direction of travel. Later that day, Crouch initiated the traffic stop of a vehicle that matched the description and which did not have an attached front license plate as required by Missouri law.

Crouch asked the driver and sole occupant of the vehicle for his license, to which the driver replied that he did not have one. Crouch then asked the driver to accompany him to his patrol car, where the driver identified himself as Joseph Pulliam. During further questioning, Pulliam revealed that he had just visited with his parole officer and had refused to take a drug test because it would have been positive. Crouch sought and received Pulliam's consent to search his car. A search of the car revealed apparent bottles of urine, a product designed to defeat drug tests, and a prescription bottle containing residue that later tested positive for the presence of methamphetamine. Crouch placed Pulliam under arrest and read him his Miranda rights. Further questioning revealed that Pulliam had two firearms at home, which led to a search of Pulliam's residence, where weapons and controlled substances were found.

The parole officer's telephone conversation with Crouch was never mentioned during the hearing on Pulliam's motion to suppress or during Pulliam's trial. On cross-examination during the suppression hearing, Crouch stated that although he was

aware of Pulliam's association with a local drug dealer, he did not know who the driver of the vehicle was prior to the stop and did not know what type of vehicle Pulliam drove. Crouch testified that he stopped the vehicle for failure to display a front license plate. The government asserts that it told Pulliam's counsel of the telephone conversation between the parole officer and Crouch shortly after the government learned of it, but Pulliam says that he did not learn of the communication until his sentencing, when the Assistant United States Attorney mentioned it to the district court.

The district court overruled Pulliam's objection to the presentence report and concluded that unlawful use of a weapon, as defined under Missouri state law is a "violent felony" for purposes of the Armed Career Criminal Act as expressed in 18 U.S.C. § 924(e) and the United States Sentencing Guidelines § 4B1.4. This resulted in a mandatory minimum sentence of fifteen years, which Pulliam received.

II.

Pulliam argues that the government failed to inform him of the conversation between Crouch and Pulliam's parole officer and that Crouch was untruthful when he testified during the suppression hearing and at trial. A new trial is necessary, Pulliam contends, because the government withheld impeachment evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).

We review for an abuse of discretion the district court's denial of a motion for a new trial based on undisclosed Brady material. United States v. Ryan, 153 F.3d 708, 711 (8th Cir. 1998). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87 (1963). Impeachment evidence may be material under the

Brady doctrine, United States v. O'Connor, 64 F.3d 355, 358 (8th Cir. 1995) (per curiam), as long as "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985).

Assuming that the government withheld this information from Pulliam until after his trial, the most that Pulliam would have been able to show that Crouch did know what type of vehicle Pulliam was driving and that the lack of a front license plate was a pretext for Crouch's actual reason for pulling him over. It is unlikely, however, that this impeachment evidence would have affected the outcome of the trial. The subjective intent of an officer is rarely relevant to the propriety of a traffic stop, see Whren v. United States, 517 U.S. 806, 813 (1996), and therefore this information would not have affected the court's determination on the motion to suppress. Further, had this information been disclosed at the suppression hearing, it is likely that Crouch's testimony at trial would have reflected his prior knowledge, leaving Pulliam with nothing to impeach. Even if we assume that Crouch would have persisted in giving apparently contradictory testimony regarding the telephone conversation, the proposed impeachment would have had little or no impact. It is undisputed that Crouch had an objectively lawful reason for stopping Pulliam's vehicle and that the events following the stop were lawful and proceeded with Pulliam's consent. Thus, the district court's denial of Pulliam's motion for a new trial reveals no abuse of discretion.

III.

Pulliam argues that his prior conviction for unlawful use of a weapon in violation of Mo. Rev. Stat. § 571.030.1(4), does not qualify as a violent felony for purposes of 18 U.S.C. § 924(e), and therefore his sentence was unlawfully enhanced.

Section 924(e) imposes a mandatory minimum sentence of fifteen years when a defendant has three prior convictions "for a violent felony or a serious drug offense." § 924(e)(1). A violent felony is a crime punishable by imprisonment for at least one year and "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B).

When determining whether a crime qualifies as a violent felony, we are generally limited to examining only "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented," rather than the underlying facts of the crime committed. Shepard v. United States, 544 U.S. 13, 15 (2005). Under Missouri law a person commits the crime of unlawful use of a weapon if he knowingly "[e]xhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner." Mo. Rev. Stat. § 571.030.1(4). The charging document tracks the statutory language precisely, while noting that the weapon involved was a Woodmaster 30.06 caliber rifle.

Missouri's crime of unlawful use of a weapon meets the statutory definition of violent felony in § 924(e)(2)(B)(i), because it involves the "use, attempted use, or threatened use of physical force against the person of another." United States v. McDile, 914 F.2d 1059, 1061-62 (8th Cir. 1990) (per curiam). Pulliam's reliance on Begay v. United States is misplaced because Begay analyzes the circumstances under which a previous crime falls under § 924(e)(2)(B)(ii). See Begay v. United States, 128 S. Ct. 1581, 1584 (2008) (noting that it is a given that the crime at issue "does not fall within the scope of the Act's *clause (i)* "violent felony" definition"). It goes without saying that displaying an operational weapon before another in an angry or threatening manner qualifies as threatened use of physical force against another person.

The judgment is affirmed.

_____