# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1397

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Joe Eugene Vincent, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: August 3, 2009
Filed: August 14, 2009

_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Joe Eugene Vincent pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He challenges the use of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), in his sentencing by the district court.[1] Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable J. Leon Holmes, Chief Judge, United States District Court for the Eastern District of Arkansas

Before this case Vincent had three felony convictions. The ACCA imposes a mandatory minimum sentence if the defendant has "three previous convictions by any court . . . for a violent felony . . . ." **18 U.S.C. § 924(e)(1)**. At issue is Vincent's 1994 conviction for possession of a sawed-off shotgun under Ark. Code Ann. § 5-73-104 (1987). The Pre-Sentence Report considered this conviction a "violent felony" under 18 U.S.C. § 924(e)(2)(B).

Vincent objected that the 1994 conviction was not a violent felony. The district court concluded that there was not enough information to show the gun met the federal definition of a sawed-off shotgun. However, the court determined there was sufficient information to show the "conviction involved conduct that by its nature presented a serious risk of physical injury to another." *United States v. Vincent,* 2007 WL 473691, at *2 (E.D. Ark. Feb. 7, 2007). The court overruled Vincent's objection, applied the ACCA, and sentenced him to 188 months.

This court reviews de novo the finding that a defendant's prior conviction constitutes a violent felony. *United States v. Sumlin,* 147 F.3d 763, 765 (8th Cir. 1998).

The only issue is whether the 1994 conviction is a violent felony under the ACCA. A "violent felony" means a crime punishable by a term of imprisonment exceeding one year that is "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." **18 U.S.C. § 924(e)(2)(B)(ii)**. As possession of a saw-off shotgun is not specifically listed, it is a violent felony only if it involves conduct that presents a serious potential risk of physical injury to another.

Both at the district court and on appeal, Vincent contends that the 1994 conviction can be an ACCA violent felony only if the sawed-off shotgun meets the

federal definition of a sawed-off shotgun in 26 U.S.C. § 5845. Section 5845(a) defines a sawed-off shotgun by the barrel length or overall length of the gun. *See* **26 U.S.C. § 5845(a)(2)**. At the time of the conviction, Arkansas law prohibited any sawed-off gun, regardless of length. *See Moore v. State,* 801 S.W.2d 638, 642 (Ark. 1990) ("[T]he extent to which [the barrel of the shotgun] had been shortened is not relevant to this prosecution"). Vincent concludes that the § 5845(a) standard should be read into the ACCA statute, even though the ACCA statute does not refer to § 5845(a). *Cf. United States v. Allegree,* 175 F.3d 648, 651 (8th Cir. 1999) (ACCA applied to conviction for possession of a sawed-off shotgun whose length met 26 U.S.C. § 5845 – although this section was not cited or discussed in the opinion); *United States v. Childs,* 403 F.3d 970, 971 (8th Cir. 2005) (ACCA applied to juvenile conviction for possession of a sawed-off shotgun; neither the length of the gun nor 26 U.S.C. § 5845 were cited or discussed in the opinion).

True, Sentencing Guideline § 4B1.4(b)(3)(A) – on armed career criminals – refers to a "firearm" as "a type described in 26 U.S.C. § 5845(a)." Section 4B1.4 implements 18 U.S.C. § 924(e) into the Sentencing Guidelines. "If the offense level determined under this section [U.S.S.G. § 4B1.4] is greater than the offense level otherwise applicable, the offense level determined under this section shall be applied." **U.S.S.G. § 4B1.4 cmt. background**. Section 4B1.4 does not apply in this case.

This court rejected Vincent's challenge in an earlier appeal. *United States v. Vincent*, 519 F.3d 732 (8th Cir. 2008). As the court noted, the issue is not whether the 1994 shotgun meets the § 5845 standard, but whether the prior "conviction is for a crime that 'otherwise involves conduct that presents a serious potential risk of physical injury.'" *Id.* at 733.

The Arkansas statute under which Vincent was convicted prohibited the possession of any "sawed-off shotgun or rifle, . . . or other implement for the infliction of serious physical injury or death which serves no common lawful purpose." **Ark. Code Ann. § 5-73-104(a)** (amended 1993). At first glance, the "serious physical

injury" phrase might not appear to modify "shotgun." However, the Arkansas Supreme Court has held that a conviction for use of each prohibited weapon listed in the statute – including a sawed-off shotgun – has the element that the weapon "will inflict serious physical injury or death *and* serves no lawful purpose." *Bridges v. State,* 938 S.W.2d 561, 563 (Ark. 1997). This court concluded that the sawed-off shotgun conviction was a crime of violence, irrespective of the § 5845 standard. *Vincent*, 519 F.3d at 734.

## II.

The Supreme Court vacated this court's earlier opinion in this case and remanded for further proceedings in light of *Begay v. United States*, 553 U.S. ___, 128 S.Ct. 1581 (2008), and *Chambers v. United States*, 555 U.S. ___, 129 S.Ct. 687 (2009). *Vincent v. United States*, 129 S.Ct. 996 (2009). Both cases interpret the "otherwise" clause of § 924(e). *Begay* held that the clause does not include the state-law offense of driving under the influence. *Begay*, 128 S.Ct. at 1588. The "otherwise" clause in the ACCA's definition of crime of violence "covers only those crimes 'roughly similar, *in kind as well as in degree of risk posed,* to the examples themselves.'" *United States v. Gordon*, 557 F.3d 623, 625 (8th Cir. 2009), *quoting Begay*, 128 S.Ct. at 1585. "The *Begay* Court elucidated the similar-in-kind requirement by noting the examples 'all typically involve purposeful, violent, and aggressive conduct.'" *Id.*, *quoting Begay*, 128 S.Ct. at 1586.

In *Chambers*, the Supreme Court concluded that the state-law crime of failing to report for confinement is not a violent felony under the ACCA. *Chambers*, 129 S.Ct. at 693. The Court noted that this "crime amounts to a form of inaction, a far cry from the purposeful, violent, and aggressive conduct potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion." *Id.* at 692 (quotations omitted).

A.

"In determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *United States v. Boaz*, 558 F.3d 800, 807 (8th Cir. 2009), *quoting Begay*, 128 S.Ct. at 1584. "When the law defines an offense by proscribing several discrete, alternative sets of elements that might be shown as different manners of committing the offense, we employ the modified categorical approach that permits examination of a limited class of materials to determine which set of elements the defendant was found to have violated." *Id.* This class of materials includes the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005).

Here, the Arkansas statute bans "Criminal Use of a Prohibited Weapon":

A person commits the offense of criminal use of prohibited weapons if, except as authorized by law, he or she uses, possesses, makes, repairs, sales, or otherwise deals in any:
(1). Bomb;
(2). Machine gun;
(3). Sawed-off shotgun or rifle;
(4). Firearm specially made or specially adapted for silent discharge;
(5). Metal knuckles; or
(6). Other implement for the infliction of serious physical injury or death.

**Ark. Code Ann. § 5-73-104 (1987)**. "If the predicate statute reaches a broad range of conduct, this court may expand the inquiry to review the charging papers and jury instructions, but *only* to determine which part of the statute the defendant violated." *United States v. Howell*, 531 F.3d 621, 622-23 (8th Cir. 2008).

Vincent pled guilty that he did "use, possess, or otherwise deal in" a sawed-off shotgun. Throughout this litigation, all participants, including Vincent, have characterized the disputed conviction as possession of a sawed-off shotgun. The facts of the PSR, to which Vincent did not object, are that he "was in possession of a stolen vehicle" and "a sawed off shotgun was found sitting on the front passenger seat." Objecting to the PSR, Vincent acknowledged a conviction for possession, but argued the weapon's barrel length was never proved.[2] Overruling the objection, the district court observed "the Court received into evidence, without objection, the criminal docket of the case that resulted in Vincent's conviction for possessing a sawed-off shotgun." At sentencing, the district court described the prior offense as "possession of a sawed-off shotgun." Vincent's appellate Brief refers to the § 5-73-104 conviction as "possession of a 'sawed-off shotgun' . . . ." His supplemental Brief, filed after the Supreme Court's remand, states that "what is truly at issue is whether possession of a sawed-off shotgun qualifies as a violent felony under the ACCA."

Absent any prior objection or argument to the contrary, at this stage of litigation any assertion that Vincent was not convicted for possessing a sawed-off shotgun must receive plain error review. **Fed. R. Crim. P. 52(b)**. Under plain error review, "there must be (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Keller*, 413 F.3d 706, 710 (8th Cir. 2005), *quoting Johnson v. United States*, 520 U.S. 461, 466-67 (1997). Finally, if these three elements are met, relief may be

---

[2]Vincent's objection states, in part:

It seems fundamentally unfair that an individual would be subjected to the enhancements of 18 U.S.C. § 924(e)(2)(B)(ii) when the statute requires that the possession of firearms subject to be determined to qualify as a crime of violence meet the definition found in 26 U.S.C. § 5845(a). Mr. Vincent, in his plea of guilty to the charge in 1994, did not admit to the definitions required for the enhancement to apply in this case.

granted if, in this court's discretion, the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*, *quoting Johnson*, 520 U.S. at 467.

In *United States v. Mastera*, 435 F.3d 56, 61-62 (1st Cir. 2006), defense counsel "more or less conceded" facts showing which part of the Massachusetts burglary statute the defendant violated. Reviewing the ACCA sentence for plain error, the First Circuit held the record showed a qualifying predicate offense. "It may be debatable whether the defendant's admission, which was not made during the plea colloquy for the original conviction, falls within the evidence permitted by *Taylor* and *Shepard.*" *Id.* at 62. "But it was not a 'clear' or 'obvious' transgression of the *Shepard* rule for the sentencing court to consider the admission (which was sufficient to justify a conclusion by the court that the conviction was for generic burglary)." *Id.*

At all points of this litigation Vincent has acknowledged that his § 5-73-104 conviction is for possession of a sawed-off shotgun. Under plain error review, this court finds that any error in the *Shepard* analysis, if error at all, is not clear or obvious.

B.

*Begay* and *Chambers* create a two-part test for identifying violent offenses within the "otherwise" clause of § 924(e). First, the prior offense must "present[] a serious potential risk of physical injury to another." **18 U.S.C. § 924(e)(2)(B)(ii)**. Second, the offense must be "roughly similar, in kind as well as degree of risk posed, to the" offenses listed in § 924(e)(2)(B)(ii). *Begay*, 128 S.Ct. at 1585.

As for the first prong, possession of a sawed-off shotgun clearly presents a serious potential risk of physical injury to another. As interpreted by the Arkansas Supreme Court, Ark. Code Ann. § 5-73-104(a) only applies to weapons "which will

-7-

inflict serious injury or death." ***Bridges***, 938 S.W.2d at 563. Sawed-off shotguns "are inherently dangerous and lack usefulness except for violent and criminal purposes." ***Childs***, 403 F.3d at 971, *quoting **Allegree***, 175 F.3d at 651. Possession of a dangerous weapon that has no lawful purpose creates a serious potential risk of physical injury to others. *Cf. **United States v. Zuniga***, 553 F.3d 1330, 1334 (10th Cir. 2009) (holding that possession of a weapon in prison presents a serious risk of physical injury to another because there is no lawful reason for a prisoner to possess a weapon), *petition for cert. filed* (U.S. Apr. 16, 2009) (No. 08-9944); ***United States v. Fortes***, 141 F.3d 1, 7 (1st Cir. 1998) (noting that under federal law "not all firearms must be registered, only those that Congress found to be inherently dangerous and lacking in lawful purposes, such as sawed-off shotguns and grenades"). *But see **United States v. Haste***, 292 Fed. Appx. 249, 250 (4th Cir. 2008) (per curiam) (unpublished) (concluding, without analysis, that "conviction for felonious possession of a weapon of mass destruction" is not a violent felony under the ACCA).

Second, this court must consider whether possession of a sawed-off shotgun is roughly similar, in kind as well as degree of risk posed, to the offenses listed in § 924(e) – burglary, arson, extortion, and the use of explosives. Like the listed crimes, possession of a sawed-off shotgun is illegal precisely because it enables violence or the threat of violence. *See **Bridges***, 938 S.W.2d at 563. Unlike DUI, a strict liability crime, conviction under this Arkansas statute requires proof of mens rea. ***State v. Seltzer***, 791 S.W.2d 365, 366 (Ark. 1990) (requiring proof that the defendant "purposely, knowingly, or recklessly possessed" a prohibited weapon). Like explosives, a sawed-off shotgun can inflict indiscriminate carnage. *See **United States v. Upton***, 512 F.3d 394, 404 (7th Cir. 2008) ("[T]he shortened barrel makes the guns easier to conceal and increases the spread of the shot when firing at a close range."). Possession of a weapon that has only unlawful purposes makes it "more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." ***Begay***, 128 S.Ct. at 1586.

This court also relies on, as persuasive authority, the commentary to U.S.S.G. § 4B1.2(a), which defines a "crime of violence."[3] The "definition of a predicate 'crime of violence' closely tracks ACCA's definition of 'violent felony.'" *James v. United States*, 550 U.S. 192, 206 (2007). "The statutory definition of 'violent felony' is viewed as interchangeable with the guidelines definition of 'crime of violence.'" *United States v. Williams*, 537 F.3d 969, 971 (8th Cir. 2008), *quoting United States v. Johnson,* 417 F.3d 990, 996 (8th Cir. 2005). While *Begay*'s holding applies only to the ACCA, this court applies *Begay* analysis to U.S.S.G. § 4B1.2(a). *United States v. Pearson*, 553 F.3d 1183, 1185 (8th Cir. 2009). *See also United States v. Jackson*, 549 F.3d 1115, 1118 (7th Cir. 2008) ("[C]omplying with the Supreme Court's edict, we have held, following the case law set forth in *Begay,* that a DWI is not a crime of violence for purposes of the sentencing guidelines.").

---

[3]Under the Sentencing Guidelines:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that— . . . (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

**U.S.S.G. § 4B1.2(a)**. Under the ACCA:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, . . . that— . . . (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

**18 U.S.C. § 924(e)(2)(B)**.

In *James*, the Supreme Court cited, as persuasive authority, U.S.S.G. § 4B1.2(a) Application Note 1 to interpret the ACCA. *James*, 550 U.S. at 206-07. Application Note 1 states: "'Crime of violence' does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a)." **U.S.S.G. § 4B1.2 cmt. n.1**. In other words, the commentary indicates that possession of a sawed-off shotgun — a firearm described in 26 U.S.C. § 5845(a)[4] — is a crime of violence under U.S.S.G. § 4B1.2(a). Following the Supreme Court, this court relies on the Sentencing Guidelines's commentary as persuasive authority that the kinds of risks posed by sawed-off shotguns render possession a "crime of violence" under the Sentencing Guidelines, and accordingly, a "violent felony" under the ACCA.[5]

Applying *Begay*, the Tenth Circuit held that a prisoner's possession of a weapon was roughly similar, in kind as well as degree of risk, to the § 924(e) listed crimes. *Zuniga*, 553 F.3d at 1334-36. *Begay* instructs that violent felonies "typically" involve purposeful, violent, and aggressive conduct. *Begay*, 128 S.Ct. at 1586. The *Zuniga* court reasoned that a statute reaching intentional, knowing, or reckless conduct could still fall within the "otherwise" clause of § 924(e) because violations of such statutes "typically" involve purposeful conduct. *Zuniga*, 553 F.3d at 1334-35. Possession of a weapon in prison, the *Zuniga* court concluded, is violent and aggressive because it "creates the possibility — even the likelihood — of a future

_____

[4]When determining whether a prior conviction under Arkansas's sawed-off shotgun statute is a "violent felony," this court looks to Arkansas law, not to the definition of sawed-off shotgun in 26 U.S.C. § 5845(a).

[5]The United States Sentencing Commission submitted proposed amendments to the Guidelines to Congress on May 1, 2009, more than a year after *Begay* and nearly four months after *Chambers*. The proposed amendments include a technical revision to the § 4B1.2 commentary, but do not change the definition of "crime of violence" that includes possession of a sawed-off shotgun. *See* **Sentencing Guidelines for United States Courts**, 74 Fed. Reg. 21,750, 21,760 (May 8, 2009).

-10-

violent confrontation." *Id.* at 1335. Similarly, possession of a sawed-off shotgun — a weapon with no lawful purpose — is purposeful, violent, and aggressive conduct.

This court concludes that possession of a sawed-off shotgun is similar, in kind as well as degree of risk posed, to the offenses listed in § 924(e). The district court did not err by finding that the 1994 conviction is an ACCA-qualifying felony.

The judgment of the district court is affirmed.

GRUENDER, Circuit Judge, dissenting.

The question presented in this case, as the Court defines it, is whether Vincent's 1994 conviction for possession of a sawed-off shotgun in violation of section 5-73-104 of the Arkansas Code qualifies as a "violent felony" under the Armed Career Criminal Act. In my view, the Supreme Court's decision in *Begay v. United States*, 553 U.S. ---, 128 S. Ct. 1581 (2008), compels us to find that simple possession of a sawed-off shotgun does not qualify as a violent felony because the crime itself does not involve violent and aggressive conduct. Because the Court reaches a contrary conclusion, I respectfully dissent.

The ACCA provides that a defendant who violates 18 U.S.C. § 922(g) is subject to a mandatory minimum term of fifteen years' imprisonment if he has three previous convictions for a violent felony. *See* 18 U.S.C. § 924(e)(1). Although Vincent pled guilty to violating § 922(g) and has three previous convictions for felony offenses, he argues that his conviction for violating section 5-73-104 of the Arkansas Code does not qualify as a violent felony. In this context, "violent felony" is a term of art, which the ACCA defines as

any crime punishable by imprisonment for a term exceeding one year . . . that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).

To decide whether a defendant's previous conviction qualifies as a violent felony, a court must first "choose the right category" in which to place the underlying crime. *Chambers v. United States*, 555 U.S. ---, 129 S. Ct. 687, 690 (2009). This so-called categorical approach requires a court "[to] consider the offense generically, that is to say, . . . in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *See Begay*, 128 S. Ct. at 1584. In this instance, the "right category"—that is, the crime that Vincent committed—is not readily apparent. *Cf. Chambers*, 129 S. Ct. at 690 ("[S]ometimes the choice [of the right category] is not obvious.").

The Court correctly notes that the Arkansas statute under which Vincent was convicted prohibited possessing a sawed-off shotgun as well as using, making, repairing, selling, or otherwise dealing in a sawed-off shotgun. *See* Ark. Code Ann. § 5-73-104 (1993).[6] Where a statute "places together in a single numbered . . . section

_____

[6]More precisely, the statute prohibited using, possessing, making, repairing, selling, or otherwise dealing in "any bomb, machine gun, sawed-off shotgun or rifle, firearm specially made or specially adapted for silent discharge, metal knuckles, or

-12-

several different kinds of behavior," a reviewing court must decide whether, for purposes of the ACCA, the statute defines "separate crime[s]." *Chambers*, 129 S. Ct. at 691. If so, the court may "look beyond the complete statutory definition" to sources such as "the charging document, the terms of a plea agreement or transcript of colloquy . . . , or to some comparable judicial record" to determine which crime the defendant committed. *United States v. Williams*, 537 F.3d 969, 973 (8th Cir. 2008) (second quotation from *Shepard v. United States*, 544 U.S. 13, 26 (2005)); *see also Chambers*, 129 S. Ct. at 691.

The kinds of behavior described in section 5-73-104 constitute different categories of criminal conduct that do not necessarily overlap with one another. For example, although a person must possess a sawed-off shotgun in order to use it, a person need not use a sawed-off shotgun in order to possess it or deal in it. Moreover, the different kinds of behavior described in section 5-73-104 pose varying degrees of risk to others. For example, using a sawed-off shotgun (*e.g.*, firing it) is more likely to result in death or physical injury to another than simply possessing a sawed-off shotgun (*i.e.*, without using it) or dealing in a sawed-off shotgun (*e.g.*, selling it). Given these differences, I would find that section 5-73-104 defines at least three separate crimes: using a sawed-off shotgun, possessing a sawed-off shotgun, and dealing in a sawed-off shotgun.[7] On the present record, it is not possible to determine which of these crimes Vincent committed, for Vincent was charged with unlawfully

---

other implement for the infliction of serious physical injury or death which serves no common lawful purpose." Since Vincent was charged with using, possessing, or dealing in a sawed-off shotgun, the other weapons enumerated in section 5-73-104 are not relevant here.

[7]Making a sawed-off shotgun, repairing a sawed-off shotgun, and selling a sawed-off shotgun might also be separate crimes, but I will simplify matters by assuming that they each involve dealing in a sawed-off shotgun and therefore constitute a single criminal category for purposes of the ACCA.

-13-

using, possessing, or dealing in a sawed-off shotgun.[8] Accordingly, I would vacate Vincent's sentence and remand to allow the district court to decide, in the first instance, the particular crime that underlies Vincent's previous conviction. *Cf. Williams*, 537 F.3d at 973 (remanding to allow the district court to "consider permissible materials, as per *Shepard*, and determine the particular offense" underlying the defendant's previous conviction for "auto theft").

The Court purports to isolate the crime of possessing a sawed-off shotgun from the other two crimes included in the charging document based on its observation that "[t]hroughout this litigation, all participants, including Vincent, have characterized the disputed conviction as possession of a sawed-off shotgun." *Ante* at 6. On the contrary, our original opinion reported that "[c]ertified copies of the information and judgment establish that Vincent used *or* possessed [a sawed-off shotgun]." *United States v. Vincent*, 519 F.3d 732, 733 (8th Cir. 2008) (emphasis added), *vacated*, 555 U.S. ---, 129 S. Ct. 996 (2009); *see also id.* (suggesting that Vincent's previous conviction "involved his *use* of a sawed-off shotgun" (emphasis added)). In any event, the parties had no reason to quibble over the distinction between the crimes of using and possessing a sawed-off shotgun because, before *Begay*, that distinction would not have changed the outcome of the ACCA inquiry. *Compare id.* at 734 (holding that "Vincent's prior conviction for criminal use of a [sawed-off shotgun] is a violent felony"), *with United States v. Allegree*, 175 F.3d 648, 651 (8th Cir. 1999) (holding that a conviction for possession of a sawed-off shotgun qualifies as a "crime

---

[8]Specifically, Vincent was charged with the following:

> [t]he said defendant(s) in Pulaski County, on or about November 24, 1993, unlawfully, feloniously, did use, possess, or otherwise deal in any sawed-off shotgun, metal knuckles, or other implement for the infliction of serious physical injury or death which served no common lawful purpose, to wit: A SAWED-OFF SHOTGUN, against the peace and dignity of the State of Arkansas.

of violence" under U.S.S.G. § 4B1.2, which we have interpreted to have the same meaning as the term "violent felony" under the ACCA), *and United States v. Childs*, 403 F.3d 970, 971 (8th Cir. 2005) (holding that a juvenile conviction for "possession of a short-barreled shotgun is a violent felony"). After *Begay*, however, the distinction between the crimes of using and possessing a sawed-off shotgun becomes dispositive; for if Vincent was convicted of simple possession of a sawed-off shotgun—which itself does not involve violent and aggressive conduct—I am convinced that *Begay* compels us to find that his conviction does not qualify as a violent felony.

There is no dispute that Vincent's 1994 conviction qualifies as a felony because it was punishable by imprisonment for a term exceeding one year. *See* § 5-73-104 (providing that criminal possession of a prohibited weapon is a "Class B felony if the weapon is a bomb, machine gun, or firearm specially made or specially adapted for silent discharge," but otherwise is a "Class D felony"); Ark. Code Ann. § 5-4-401(5) (1993) ("For a Class D felony, the sentence shall not exceed six (6) years . . . ."). But the crime of possessing a sawed-off shotgun does not "[have] as an element the use, attempted use, or threatened use of physical force against the person of another." *Cf.* § 924(e)(2)(B)(i). Likewise, the crime of possessing a sawed-off shotgun is not "burglary, arson, or extortion," and does not "involve[] use of explosives." *Cf.* § 924(e)(2)(B)(ii). The question, then, comes down to whether the crime of possessing a sawed-off shotgun fits within the residual clause of the ACCA, which encompasses certain crimes that "involve[] conduct that presents a serious potential risk of physical injury to another." *See id.*

Before *Begay*, our cases interpreting the residual clause "focused solely on the degree of risk of physical injury associated with a crime." *Williams*, 537 F.3d at 972 (collecting cases). This approach is no longer permissible, notwithstanding our pre-*Begay* precedents, for the Supreme Court has made clear "that the degree of risk of

-15-

physical injury is only half of the analysis." *Id.* After *Begay*, a crime fits within the residual clause only if it "pose[s] a similar degree of risk of physical injury as the example crimes *and* [is] similar in kind to the example crimes." *Id.* (emphasis added). We have observed that the Supreme Court "elucidated the similar-in-kind requirement by noting [that] the examples 'all typically involve purposeful, violent, and aggressive conduct.'" *United States v. Gordon*, 557 F.3d 623, 625 (8th Cir. 2009) (quoting *Begay*, 128 S. Ct. at 1586). And we have therefore held that an offense "may qualify" as a violent felony under the residual clause if it (1) "involves conduct that presents a serious potential risk of physical injury to another" and (2) "typically involve[s] purposeful, violent, and aggressive conduct." *Id.* at 626.

I will assume that the Court is correct that the crime of possessing a sawed-off shotgun presents a serious potential risk of physical injury to another. *See ante* at 8. I will further assume that the Court is correct that the crime typically involves purposeful conduct, though I do not join the Court in suggesting that *any* mens rea requirement, including recklessness, is sufficiently similar to the purposeful conduct typically involved in committing the example crimes. *See ante* at 8. Despite these assumptions, I cannot agree with the conclusion that simple possession of a sawed-off shotgun involves violent and aggressive conduct.

The crux of the Court's explanation for its conclusion seems to be that, "[l]ike the listed crimes, possession of a sawed-off shotgun is illegal precisely because it enables violence or the threat of violence." *Ante* at 8. In my view, the Court's explanation fails to answer the question we asked in *Williams*, *Gordon*, and our other post-*Begay* precedents: whether the crime itself typically *involves* violent and aggressive conduct. This subtle difference in terminology has significant consequences; after all, many crimes that do not themselves *involve* violent and aggressive conduct may nevertheless *enable* violence or the threat of violence.

-16-

Consider in this regard the crime of possessing explosives, which clearly enables violence or the threat of violence, yet does not appear to be sufficiently similar in kind to crimes involving *use* of explosives, which are among the comparators enumerated in the residual clause. *Cf. United States v. Flores*, 477 F.3d 431, 436 (6th Cir. 2007) ("[T]ellingly, the [ACCA] provides that the *use*—rather than the possession—of explosives is conduct that rises to the level of a violent felony."). The core difference between criminal use and criminal possession—whether of an explosive device or a sawed-off shotgun—is that use typically involves violent and aggressive conduct, while simple possession merely creates a potential for violence and aggression that is ordinarily realized only if possession ripens into use. In many instances, perhaps including Vincent's previous conviction, criminal possession never ripens into criminal use and so never results in violence or aggression. Even if criminal possession ripens into criminal use more often than not, that would not mean that possession itself involves violent and aggressive conduct, only that possession often precedes the separate crime of using a sawed-off shotgun, which typically does involve violent and aggressive conduct.[9]

Similarly, it may be true, as an empirical matter, that criminal possession of a sawed-off shotgun is frequently discovered in connection with a violent offense, such as armed robbery or brandishing a firearm. But the happenstance of how criminal possession is discovered cannot tell us whether possession itself typically involves violent and aggressive conduct. Under the categorical approach, our focus is limited

---

[9]The Court draws a different analogy between explosives and sawed-off shotguns, noting that "[l]ike explosives, a sawed-off shotgun can inflict indiscriminate carnage." *Ante* at 8. Although explosives and sawed-off shotguns certainly can be used to inflict indiscriminate carnage, the Court's analogy fails to account for the fact that criminal use of explosives itself typically involves violent and aggressive conduct—that is to say, the purposeful infliction of carnage—while simple possession of a sawed-off shotgun merely creates a potential for violence and aggression that might never be realized.

to the "statutory definition" of the crime at hand, *Gordon*, 557 F.3d at 626, which forecloses a roving inquiry into the totality of the circumstances associated with the crime, or how the crime "might be committed on a particular occasion," *id.* at 626 n.3 (quoting *Williams*, 537 F.3d at 972 n.1). As a result, if the crime of possessing a sawed-off shotgun itself does not involve violent and aggressive conduct, then it makes no difference whether it is frequently discovered in connection with a *different* offense (*e.g.*, armed robbery or brandishing a firearm) that *is* violent and aggressive.[10]

In effect, the Court's holding risks expanding the ACCA's residual clause to include any crime that has a hypothetical connection to violence. Part of the conceptual difficulty may stem from the Supreme Court's introduction of the terms "violent" and "aggressive" in *Begay* without defining them or "explain[ing] in other than conclusory [language] why [the crime of driving under the influence] was not violent or aggressive." *United States v. Herrick*, 545 F.3d 53, 58 (1st Cir. 2008). The First Circuit has attempted to clear up the resulting confusion by announcing workable definitions of "violent" and "aggressive" that comport with the ordinary meaning of

_____

[10]Of course, if a defendant is ultimately convicted of armed robbery, brandishing a firearm, or some other violent offense committed during the same course of conduct as the crime of possessing a sawed-off shotgun, then that violent offense would supplant the crime of possessing a sawed-off shotgun as the relevant conviction for purposes of applying the ACCA, which requires "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed *on occasions different from one another*" to trigger the mandatory minimum sentence. § 924(e)(1) (emphasis added). I expect that most if not all convictions for armed robbery, brandishing a firearm, or other characteristically violent offenses will "[have] as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i); *see United States v. Pulliam*, 566 F.3d 784, 788 (8th Cir. 2009) (holding that a Missouri statute that prohibits knowingly "[e]xhibit[ing], in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner" qualifies as a violent felony under the ACCA because it has as an element the use, attempted use, or threatened use of physical force against the person of another).

-18-

those terms. In particular, the court defined "violent" as "marked by extreme force or sudden intense activity," *id.* (quoting Merriam-Webster's Collegiate Dictionary 1396 (11th ed. 2003)), and defined "aggressive" as "tending toward or exhibiting aggression," which the court in turn defined as "a forceful action or procedure (as an unprovoked attack)[,] esp[ecially] when intended to dominate or master," *id.* (quoting Merriam-Webster's Collegiate Dictionary 24 (11th ed. 2003)).

Once the question is properly framed and the relevant terms are expressly defined, it becomes plain that simple possession of a sawed-off shotgun itself does not involve violent and aggressive conduct in the manner of burglary, arson, extortion, or criminal use of explosives. Indeed, to say that simple possession of a weapon is "marked by extreme force or sudden intense activity" or exhibits "a forceful action . . . intended to dominate or master" would strain the ordinary meaning of the terms violent and aggressive.[11]

The Court draws support for its conclusion from two additional sources of "persuasive authority," both of which I find unpersuasive. First, the Court relies on the U.S. Sentencing Commission's commentary to U.S.S.G. § 4B1.2 as authority for the proposition that "the kinds of *risks* posed by sawed-off shotguns render possession

---

[11]To be sure, we have held that sawed-off shotguns are "inherently *dangerous* and lack *usefulness* except for violent and criminal purposes." *United States v. Childs*, 403 F.3d 970, 971 (8th Cir. 2005) (emphasis added) (quoting *United States v. Allegree*, 175 F.3d 648, 651 (8th Cir. 1999)). While these attributes explain why the crime of possessing a sawed-off shotgun presents a serious potential risk of physical injury to another, that is now "only half of the analysis," *Williams*, 537 F.3d at 972. The attributes of an inanimate object can, of course, make the use or threatened use of the object violent and aggressive; brandishing a firearm is just one example of such conduct. *Cf. United States v. Pulliam*, 566 F.3d 784, 788 (8th Cir. 2009). I am not convinced, however, that simple possession of an inanimate object involves violent or aggressive conduct in the sense that those words are ordinarily used.

a 'crime of violence' under the [guidelines], and accordingly, a 'violent felony' under the ACCA." *Ante* at 10 (emphasis added). It bears repeating that in the post-*Begay* world, the potential risk of physical injury to another is "only half of the analysis." *Williams*, 537 F.3d at 972. The commentary to § 4B1.2 has nothing to say about the other half of the analysis, which necessitates distinguishing between crimes that typically involve purposeful, violent, and aggressive conduct and crimes that do not.[12] Thus, to the extent this case hinges on whether the crime of possessing a sawed-off shotgun involves violent and aggressive conduct, the commentary to § 4B1.2 has little or no persuasive value.

Second, the Court relies on *United States v. Zuniga*, 553 F.3d 1330 (10th Cir. 2009), *petition for cert. filed*, --- U.S.L.W. --- (U.S. Apr. 16, 2009) (No. 08-9944), a case in which "the Tenth Circuit held that a prisoner's possession of a weapon was roughly similar, in kind as well as degree of risk, to the § 924(e) listed crimes," *ante* at 10 (citing *Zuniga*, 553 F.3d at 1334-36). According to the Court, the Tenth Circuit concluded that the crime of possessing a weapon in prison "is violent and aggressive because it 'creates the possibility—even the likelihood—of a future violent confrontation.'" *Ante* at 11 (quoting *Zuniga*, 553 F.3d at 1335). I think the Court's reliance on *Zuniga* is misplaced, mostly because the Tenth Circuit answers a different question than the one we asked in *Williams*, *Gordon*, and our other post-*Begay*

___

[12]The proposed amendments to which the Court refers do not address this issue, *see ante* at 10 n.5, which is perhaps unsurprising since *Begay* dealt with the ACCA rather than the commentary to § 4B1.2, *see United States v. Williams*, 546 F.3d 961, 962 n.1 (8th Cir. 2008) (Colloton, J., dissenting from denial of rehearing en banc) (noting that other circuits have "observ[ed] that the statute and the guideline were adopted by different bodies at different times, that the texts of the provisions are not identical, and that the Sentencing Commission has added authoritative commentary to § 4B1.2, which does not apply to § 924(e)"). Under these circumstances, interpreting the Commission's silence concerning *Begay* would amount to speculation.

precedents. The better approach is to follow our own precedents by looking to whether the crime of possessing a sawed-off shotgun itself typically *involves* violent and aggressive conduct, not merely whether it is one link in a chain leading to a *possibility* or a *likelihood* of violence that may or may not materialize into actual violence or aggression in the future.

For the foregoing reasons, I respectfully dissent.

---