[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14167

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 8, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-00008-CR-T-33-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ROBERT L. MCGILL,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 8, 2010)

Before BLACK, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

The Armed Career Criminal Act (ACCA) prescribes a 15-year mandatory minimum sentence for any person who has "three previous convictions . . . for a violent felony" and possesses a firearm in violation of 18 U.S.C. § 922(g). 18 U.S.C. § 924(e)(1). Robert McGill pleaded guilty to violating § 922(g)(1), and in light of his three prior felony convictions, the Government asked the district court to sentence him as an armed career criminal. The court refused, and the Government raises this question on appeal: Was McGill's prior felony possession of a short-barreled shotgun a "violent felony" under the ACCA?

## I. BACKGROUND

Robert McGill, a convicted felon, pleaded guilty to the unlawful possession of a firearm by a felon under 18 U.S.C. § 922(g)(1). Because McGill had previous felony convictions for burglary, false imprisonment, and the unlawful possession of a short-barreled shotgun, the probation officer recommended that he be sentenced under the ACCA as an armed career criminal.

A convicted § 922(g) defendant is subject to the ACCA's 15-year mandatory minimum only if he has at least three previous convictions for violent felonies (or serious drug offenses) committed on separate occasions. 18 U.S.C. § 924(e)(1). As defined by statute,[1] violent felonies include any crime, punishable

---

[1] We refer to the ACCA as it has been amended and codified at 18 U.S.C. § 924(e).

by more than a year's imprisonment, that (i) "has as an element" the actual, attempted, or threatened use of force against another person; or (ii) "is burglary, arson, or extortion, involves use of explosives, or <u>otherwise</u> involves conduct that presents a serious potential risk of physical injury to another." <u>Id.</u> § 924(e)(2)(B) (emphasis added).

McGill objected to the proposed ACCA enhancement on the ground that his possession of a short-barreled shotgun, in violation of Florida law, did not qualify as a violent felony.[2] He argued that under the Supreme Court's decision in <u>Begay v. United States</u>, 553 U.S. 137 (2008), possessing a short-barreled shotgun did not fall within the ACCA's residual "otherwise" clause because the offense was not similar to the example crimes in § 924(e)(2)(B)(ii)—namely, burglary, arson, extortion, and the unlawful use of explosives.

The district court agreed with McGill and sentenced him to 41 months' imprisonment. On appeal, the Government argues that both Florida and federal law (1) differentiate short-barreled shotguns from ordinary firearms; (2) regulate short-barreled shotguns in the same category as machine guns, bombs, and grenades; and (3) outlaw them because such weapons are inherently dangerous,

---

[2] McGill conceded that his burglary and false-imprisonment offenses were violent felonies.

have no lawful purpose, and are used only for criminal purposes; and, therefore, (4) the possession of such a weapon is properly considered a violent felony. The Government asks us to remand the case for resentencing in accordance with the ACCA's 15-year mandatory minimum.

## II.  BEGAY'S THREE-STEP ANALYSIS

"Whether a particular conviction is a violent felony for purposes of the ACCA is a question of law we consider de novo," United States v. Canty, 570 F.3d 1251, 1254 (11th Cir. 2009), and we answer that question as it pertains to the statute's residual clause in three steps. United States v. Harrison, 558 F.3d 1280, 1287 (11th Cir. 2009). First, "we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." Begay, 553 U.S. at 141; see also Taylor v. United States, 495 U.S. 575, 600 (1990) ("[Section] 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions."); United States v. Whitson, 597 F.3d 1218, 1220–21 (11th Cir. 2010) ("In residual cases like Harrison—and Whitson's case, here—we look to the language of the statute itself to discern an offense's elements and to determine how it is 'generically' committed."); Harrison, 558 F.3d at 1290–92.

4

Second, we determine whether the generic offense "involves conduct that 'presents a serious potential risk of physical injury to another.'"  Begay, 553 U.S. at 141 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).  Third, if the offense does present such a risk, we classify it as a violent felony only if it is "roughly similar, in kind as well as in degree of risk posed," to the clause's example crimes: burglary, arson, extortion, and the unlawful use of explosives.  Id. at 143.

Beginning with the first step of the analysis, we observe that McGill's prior conviction for possessing a short-barreled shotgun arose under Florida law, which makes it a felony "for any person to own or to have in his or her care, custody, possession, or control any short-barreled rifle, short-barreled shotgun, or machine gun which is, or may readily be made, operable."  Fla. Stat. § 790.221(1).[3]  The statute requires knowledge of possession.  See C.W.C., Jr. v. State, 334 So. 2d 275 (Fla. Dist. Ct. App. 1976).  Thus, Florida bans the knowing possession of a short-barreled shotgun.[4]

---

[3] The amendments to this provision since the date of McGill's conviction are immaterial.

[4] Florida outlaws short-barreled shotguns because they are inherently dangerous and are ordinarily used for criminal purposes.  See Rinzler v. Carson, 262 So.2d 661, 666 (Fla. 1972) (explaining (1) "that the type of firearms, the possession of which is outlawed by Section 790.221 . . . is that weapon which is too dangerous to be kept in a settled community by individuals, and one which, in times of peace, finds its use by a criminal" and (2) "that the Legislature may prohibit the possession of weapons which are ordinarily used for criminal and improper purposes and which are not among those which are legitimate weapons of defense and protection.  A machine gun, particularly a hand-barreled one, which is, or which may readily be made, operable, is peculiarly adaptable to use by criminals in the pursuit of their criminal

The Florida statute does contain one exception to its ban. Florida excepts "[f]irearms in violation hereof which are lawfully owned and possessed under provisions of federal law." Fla. Stat. § 790.221(3). Therefore, we also examine if McGill lawfully possessed this weapon under federal law. Federal law, by way of the National Firearms Act ("NFA"), regulates a narrow class of weapons, termed "firearms," that includes short-barreled shotguns, machine guns, grenades, bombs, and explosives. See 26 U.S.C. § 5845(a). As discussed later, the NFA did not permit McGill to possess, or even to register, this NFA prohibited weapon. See 26 U.S.C. §§ 5841(b), (c); 5845(a)–(f), 5861(b)–(d).

McGill pled guilty to the Florida offense. Generically defined, then, the offense underlying McGill's conviction was his knowing possession of a short-barreled shotgun outlawed by both Florida and federal law.

The second step of the residual-clause analysis requires us to determine whether possessing an outlawed short-barreled shotgun "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). On this point, this Court has already held that the illegal possession of an unregistered, seven-inch-barrel rifle, in violation of the NFA, is a "crime of violence" for the purposes of the U.S. Sentencing Guidelines' career-

activities.").

6

offender enhancement, U.S.S.G. § 4B1.1. <u>United States v. Owens</u>, 447 F.3d 1345 (11th Cir. 2006).[5] In reaching that conclusion, the Court was required to find that possession of the weapon presented a serious risk of potential injury to another. The <u>Owens</u> Court pointed out that "Congress determined that the unregistered possession of the particular firearms regulated under the NFA should be outlawed because of the 'the virtual inevitability that such possession will result in violence.'" <u>Id.</u> at 1347 (quoting <u>United States v. Jennings</u>, 195 F.3d 795, 799 (5th Cir. 1999)).

Our holding in <u>Owens</u>—"that the possession of certain kinds of weapons categorically presents the potential risk of physical injury warranting [the] sentence enhancement for . . . a crime of violence," 447 F.3d at 1347—thus compels the conclusion that possessing an unregistered short-barreled shotgun "involves conduct that presents a serious potential risk of physical injury to

---

[5] In part, the Guidelines' career-offender provision, at issue in <u>Owens</u>, lengthens the recommended sentence for any defendant convicted of a third "crime of violence." U.S.S.G. § 4B1.1. The Guidelines define "crime of violence" to include any felony that (1) "has as an element" the actual, attempted, or threatened use of force against another person; or (2) "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." <u>Id.</u> § 4B1.2. Because this Guidelines definition almost perfectly mirrors the ACCA's definition of "violent felony," "[p]recisely the same analytical framework applied by the courts in ascertaining the scope of a 'crime of violence' logically obtains with respect to . . . what kind of conduct [composes] a 'violent felony.'" <u>United States v. Oliver</u>, 20 F.3d 415, 418 (11th Cir. 1994).

another" under the ACCA. 18 U.S.C. § 924(e)(2)(B)(ii).[6] But <u>Owens</u> does not fully answer the question presented in this appeal. Our holding there depended on a two-step inquiry: we considered the offense categorically and then determined that the possession of particular unregistered weapons, such as a short-barreled rifle, poses a serious risk of physical injury to others. See <u>Owens</u>, 447 F.3d at 1347.

When the Supreme Court later decided <u>Begay</u>, it added a third step: "[W]e should read the [ACCA's] examples as limiting the crimes that [the clause] covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." 553 U.S. at 143. The question here is whether unregistered short-barreled shotgun possession in violation of Florida law and the NFA survives <u>Begay</u>'s third step. In other words, is possessing an outlawed short-barreled shotgun "roughly similar, in kind as well as degree of risk posed" to burglary, arson, extortion, and the unlawful use of explosives?

In arguing that possession of an unregistered sawed-off shotgun passes <u>Begay</u>'s third step in the violent-felony analysis, the Government asserts that: (1) McGill's prior weapons offense is "purposeful" because it must be "knowing"

---

[6] Accordingly, we reject McGill's argument that the Government failed to prove possessing a short-barreled shotgun involved the requisite potential risk of physical injury. Nothing in <u>Begay</u> altered the second step of the residual-clause analysis.

under the Florida statute; (2) McGill's knowingly acquiring an NFA-prohibited weapon in itself evinces aggressive and violent conduct; (3) the sight of a short-barreled shotgun, like a bomb, is threatening; (4) possession of a short-barreled shotgun is a "crime of violence" under U.S.S.G. §§ 4B1.1 and 4B1.2, and the same result applies under the ACCA[7]; and (5) post-Begay the Eighth Circuit held sawed-off shotgun possession is a "violent felony" under the ACCA because "[p]ossession of a weapon that has only unlawful purposes makes it 'more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim.'" United States v. Vincent, 575 F.3d 820, 826 (8th Cir. 2009), cert. denied, 130 S. Ct. 3320 (2010) (quoting Begay, 553 U.S. at 145, 128 S. Ct. at 1586).

On the other hand, defendant McGill argues: (1) mere possession of a short-barreled shotgun is "a passive crime centering around possession, rather than around any overt action," United States v. Archer, 531 F.3d 1347, 1351 (11th Cir. 2008); and (2) "[t]he act of possession does not, without more . . . involve any

---

[7] The Government stresses: (1) the ACCA's definition of "violent felony" is similar to the Guidelines definition of "crime of violence," although they are not identical; (2) our Court applies the same analysis to the ACCA's violent-felony and § 4B1.2's crime-of-violence determinations, United States v. Oliver, 20 F.3d 415, 418 (11th Cir. 1994); (3) the commentary to § 4B1.2 states: "Unlawfully possessing a firearm described in 26 U.S.C. § 5845(a) (e.g., a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun) is a 'crime of violence,'" U.S.S.G. § 4B1.2, cmt. n.1; and (4) "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 37 (1993).

aggressive or violent behavior." Id. McGill does not differentiate short-barreled shotguns from generic handguns.

To answer whether McGill's offense passes Begay's third step, we bear in mind that a common feature of the ACCA's example crimes is that they all involve "purposeful, violent, and aggressive conduct," which demonstrates an increased likelihood that "an offender, later possessing a gun, will use that gun deliberately to harm a victim." Begay, 553 U.S. at 144–45, 128 S. Ct. at 1586 (quotation marks omitted).

We do not analyze whether the crime is purposeful, violent, or aggressive. Rather, we decide this case narrowly on another ground. As detailed below, Congress treats and regulates explosives and short-barreled shotguns in the same category in the NFA. Even accepting the government's argument that short-barreled shotguns are not ordinary firearms but are more like explosives in terms of dangerousness and violence, Congress included only the use, but not the possession of, explosives among the ACCA's example crimes. 18 U.S.C. § 924(e)(2)(B)(ii). For the reasons discussed below, we conclude possession of a short-barreled shotgun is not "similar in kind" to "use of explosives," its closest enumerated analog, or to the other crimes listed in the ACCA's residual clause and thus is not a violent felony.

At the outset, we recognize that there is a "reasonable—indeed, very substantial—difference between possession of a generic 'firearm' and possession of one of the specialized weapons singled-out for particularized treatment by [the NFA]." United States v. Fortes, 141 F.3d 1, 7 (1st Cir. 1998)[8]; see Jennings, 195 F.3d at 799 n.4 (stating Congress placed stricter controls over sawed-off shotguns, machine guns, silencers, grenades, and other gangster-type weapons because of its "specific declaration and finding that" these weapons "are primarily weapons of war and have no appropriate sporting use or use for personal protection.") (quoting S. Rep. No. 90-1501, at 28 (1968)).[9]

The NFA establishes a separate regulatory structure for a narrow class of specialized weapons, termed "firearms," that includes short-barreled shotguns and other inherently dangerous destructive devices, such as grenades, bombs, explosives, and rockets. ("NFA firearms"). See 26 U.S.C. §§ 5841, 5845(a)–(f).

---

[8] See also District of Columbia v. Heller, 128 S. Ct. 2783, 2815–16 (2008) ("We therefore read [United States v. Miller, 307 U.S. 174, 59 S. Ct. 816 (1939)] to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns.").

[9] See also United States v. Upton, 512 F.3d 394, 404 (7th Cir. 2008) ("People do not shorten their shotguns to hunt or shoot skeet."); United States v. Brazeau, 237 F.3d 842, 845 (7th Cir. 2001)("The point is that most firearms do not have to be registered—only those that Congress found to be inherently dangerous.").

The NFA makes it unlawful for any person to receive or possess an NFA firearm unless it is both "made"[10] and "transferred"[11] in compliance with the NFA's requirements. 26 U.S.C. § 5861(b), (c). The NFA requires the "maker" to file an application with the Bureau of Alcohol, Tobacco, and Firearms ("BATF") to make and register an NFA firearm, secure the BATF's approval, and pay a tax. See 26 U.S.C. § 5822.[12] The NFA makes it unlawful for any person to receive or possess unregistered NFA firearms. 26 U.S.C. § 5861(d).

The NFA also prohibits the "transfer" of an NFA firearm unless the transferor files an application with the BATF, identifying in detail the transferor, the transferee, and the NFA firearm. See 26 U.S.C. § 5812(a); see also 27 C.F.R. §479.84.[13] Importantly, the NFA does not allow a transferee, like Defendant

---

[10] The NFA defines "making" to include "manufacturing (other than by one qualified to engage in such business under this chapter), putting together, altering, any combination of these, or otherwise producing a firearm." 26 U.S.C. § 5845(i). In order to qualify to engage in the business of manufacturing firearms under the NFA, a manufacturer must register his business with the BATF and pay a yearly tax for each place of business. 26 U.S.C. §§ 5801, 5802.

[11] The NFA defines "transfer" to include "selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of." 26 U.S.C. § 5845(j).

[12] The maker also must identify the firearm and the maker in the application, and if the maker is an individual, he or she must submit fingerprints and a photograph with the application. 26 U.S.C. § 5822. "Manufacturers" registered to engage in the business of manufacturing firearms regulated by the NFA must also register each NFA-defined firearm with the BATF. 26 U.S.C. § 5841(b), (c).

[13] As with the manufacturer's application, if the transferee is an individual, the application must include a recent photograph of the transferee and his or her fingerprints. See 26 U.S.C. § 5812(a); 27 C.F.R. § 479.85. The transferor's application must be accompanied by a

McGill, to register a short-barreled shotgun; only the transferor, manufacturer, importer, or maker may do so. See 26 U.S.C. § 5841(b). Moreover, the maker and transferor must establish (1) "reasons why there is a reasonable necessity for such person to purchase or otherwise acquire the device or weapon" from the maker and (2) "that such person's receipt or possession of the device or weapon would be consistent with public safety." 27 C.F.R. § 478.98. The registration requirements for NFA firearms are so stringent that some have challenged them as an absolute bar to possession. See e.g., United States v. Shepardson, 167 F.3d 120 (2d Cir. 1999); United States v. McCollom, 12 F.3d 968 (10th Cir. 1993).

All to say, the NFA defines and regulates short-barreled shotguns and explosives in the same firearms category and heavily proscribes their manufacture and possession. Possession of prohibited explosives is at least as inherently dangerous, aggressive, and threatening as possession of a prohibited short-barreled shotgun. Yet Congress did not include the possession of explosives in the ACCA's list of example crimes. We cannot classify possessing one type of NFA

_____

"certificate of the local chief of police, sheriff of the county, head of the State police, State or local district attorney or prosecutor," or other acceptable person, which certificate "shall state . . . that the certifying official has no information indicating that the receipt or possession of the firearm would place the transferee in violation of State or local law or that the transferee will use the firearm for other than lawful purposes." 27 C.F.R. § 479.85. The NFA prohibits the transferee from taking possession of an NFA firearm unless the BATF has approved the transfer and accepted the registration of the firearm to the transferee. See 26 U.S.C. § 5812(b); see also 27 C.F.R. § 479.86.

13

outlawed weapon as a violent felony when the ACCA speaks only to the <u>use</u> of another. To do so would read the word "use" out of the ACCA statute. For this reason, we conclude that McGill's Florida crime of possession of an outlawed short-barreled shotgun is not "similar in kind" to the crimes listed in the ACCA's residual clause. <u>See</u> <u>Begay</u>, 533 U.S. at 143. Possession of a short-barreled shotgun fails <u>Begay</u>'s third analytical step for this reason.

Accordingly, we conclude that McGill's prior conviction for possessing an outlawed short-barreled shotgun was not a violent felony under the ACCA. The district court thus properly declined to sentence him as an armed career criminal. The sentence imposed is

**AFFIRMED.**