In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2310

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

DEWITT FIFE,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 08-CR-242—**J.P. Stadtmueller,** *Judge.*

ARGUED APRIL 23, 2010—DECIDED OCTOBER 12, 2010

Before MANION and ROVNER, *Circuit Judges,* and
HIBBLER, *District Judge.*\*

ROVNER, *Circuit Judge.* This appeal presents the
relatively rare government appeal of a criminal sen-
tence, challenging the district court's determination
that Dewitt Fife's prior convictions did not satisfy the

---

\* Hon. William J. Hibbler, District Judge for the Northern
District of Illinois, is sitting by designation.

requirements of the Armed Career Criminal Act ("ACCA") and therefore that he was not subject to the increased sentence under that Act. The unusual twist here is that the same criminal history was deemed sufficient by this court 14 years ago to meet the requirements of that same Act. *United States v. Fife*, 81 F.3d 62 (7th Cir. 1996). The district court held in this case, however, that a subsequent Supreme Court decision in *Begay v. United States*, 553 U.S. 137 (2008), altered the analysis and thus the result.

In 1995, Fife was convicted in federal court of a number of firearms-related charges. At that time, his criminal history included convictions for: burglary in 1980; aggravated arson in 1984; manufacturing or delivery of controlled substances in 1989; and armed violence in 1989. Based on those prior convictions, the court sentenced Fife as an armed career criminal under 18 U.S.C. § 924(e) of the ACCA, which provides for a minimum sentence of 15 years for defendants who meet certain criteria, including three predicate violent felonies.

That steep sentence did not, apparently, prompt Fife to abandon his criminal path. On September 16, 2008, he was indicted for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). He pled guilty to that charge, and at sentencing the court considered whether he was an armed career criminal subject to the mandatory minimum of 15 years pursuant to 18 U.S.C. § 924(e)(1). The government relied on the same convictions of burglary, aggravated arson, and armed violence in arguing that he remained an armed

career criminal for purposes of the ACCA. The district court, however, determined that he was not an armed career criminal and sentenced him to 48 months in prison, a sentence that was 11 months above the applicable range of the Sentencing Guidelines but significantly less than he would have faced had he been deemed an armed career criminal. The government appeals that determination to this court.

I.

The parties dispute the proper application of the Armed Career Criminal Act, thus we begin with the relevant language of that Act:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years. . . .

18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" as:

> [B] . . . any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

(I) has as an element the use, attempted use, or threat-ened use of physical force against the person of an-other; or

(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another;* . . . .

18 U.S.C. § 924(e)(2)(B) (emphasis added).

The emphasized language, regarding conduct that "presents a serious potential risk of physical injury to another," is known as the residual clause, and is the critical phrase for this appeal. The three previous convic-tions which the court considered in determining armed career criminal status are the convictions for: burglary in 1980; aggravated arson in 1984; and armed violence in 1989. There is no debate in this appeal as to the ap-plicability of the burglary and aggravated arson convic-tions, but Fife argues that the armed violence conviction is not for "conduct that presents a serious potential risk of physical injury to another" as that term is understood by the courts. Although we held that it met that defini-tion at the time of Fife's earlier federal conviction, *Fife*, 81 F.3d 62, Fife argues that the Supreme Court in *Begay* clarified the meaning of that phrase, and that his armed violence conviction does not fall within it. In *Begay*, 553 U.S. at 142-43, the Supreme Court made clear that the residual clause of the ACCA encompassed only offenses that were similar to the enumerated crimes of burglary, arson, extortion, or crimes involving the use of explosives, both in kind as well as in the degree of risk posed. *United*

*States v. Woods*,[1] 576 F.3d 400, 407 (7th Cir. 2009). *Begay* therefore clarified that only offenses that reflected the same "purposeful, violent, and aggressive manner" as the listed crimes would fall within the residual clause. *Begay*, 553 U.S. at 144-45; *Woods*, 576 F.3d at 407.

The difficulty in analyzing the armed violence conviction under the ACCA stems from its broad reach. The Illinois armed violence statute, 720 ILCS 5/33A-2, is violated when, while armed with a dangerous weapon, a person "commits any felony defined by Illinois Law" with the exception of murder and a number of other enumerated felonies—none of which are applicable here. The district court's determination that the armed violence conviction did not fall within the ACCA was based primarily on its conclusion that at least some categories of armed violence could not be considered violent felonies under the ACCA. As an example, the district court noted that a person arrested for driving under the influence who had a firearm in his vehicle would fall within the Illinois armed violence statute. Similarly, Fife references the possibility of a person convicted of armed violence because she possessed a gun while filing a false tax return. Those armed violence convictions presumably would not be "purposeful, vio-

---

[1] Although in *Woods* we addressed the characterization of the defendant's prior offense as a "crime of violence" under § 4B1.1 of the Sentencing Guidelines, rather than the ACCA, we noted that the identity of language between the two rendered the analyses interchangeable. *Woods*, 576 F.3d at 403-04.

lent, and aggressive" as required after *Begay* in order for a conviction to fall within the residual clause of the ACCA. Because the Illinois armed violence statute includes offenses such as those, the district court and Fife assert that the armed violence conviction cannot fall within the ACCA. A proper analysis of the ACCA, however, reveals that their concerns are unfounded and that the armed violence conviction in this case constitutes a violent felony for purposes of the ACCA.

II.

Whether a prior conviction constitutes a violent felony under the ACCA is a legal conclusion that we review de novo. *United States v. Sykes*, 598 F.3d 334, 335 (7th Cir. 2010). Our initial task is to identify precisely what offense is involved. *United States v. McDonald*, 592 F.3d 808, 810 (7th Cir. 2010). That inquiry is a categorical one, focusing on the particular elements of the statutory offense, without consideration of the underlying facts of the individual case. *Id.*; *Woods*, 576 F.3d at 403; *United States v. Dismuke*, 593 F.3d 582, 589 (7th Cir. 2010). At times, however, analysis of the elements reveals that a statute may be violated in several ways, such as a statute which creates more than one crime or one that defines one crime with multiple enumerated modes of commission. *Woods*, 576 F.3d at 405-06; *Sykes*, 598 F.3d at 339; *Johnson v. United States*, ___ U.S. ___, 130 S. Ct. 1265, 1273 (2010). In that case, some of those modes of conduct may constitute a violent offense under the ACCA, whereas other branches of the statute do not. It is critical,

then, to determine precisely which offense is involved within that statutory scheme. Under those conditions, courts may employ a "modified categorical approach" to determine the statutory offense at issue. *McDonald*, 592 F.3d at 810-11; *Woods*, 576 F.3d at 405-06; *United States v. Sykes*, 598 F.3d 334, 339 (7th Cir. 2010).

Because the inquiry must remain an objective one, focused on identifying the statutory offense itself but not the individual actions in the particular case, the modified categorical approach allows consideration of a limited range of outside documents to isolate the specific statutory offense which formed the basis for the conviction. Documents which may be consulted under this approach include the charging document, the plea agreement or the transcript of the colloquy between the judge and the defendant in which the factual basis for the plea was confirmed by the defendant, or comparable judicial records of such information. *Shepard v. United States*, 544 U.S. 13, 26 (2005); *Welch v. United States*, 604 F.3d 408, 421 (7th Cir. 2010); *Woods*, 576 F.3d at 404; *Chambers v. United States*, ___ U.S. ___, 129 S. Ct. 687, 691 (2009). Reports focusing on the individual conduct of the defendant such as arrest reports are not considered. *Welch*, 604 F.3d at 422.

## A.

Although Fife argues that the statute must be considered as a whole without any subdivisions, and the district court apparently accepted that viewpoint, the

armed violence offense in this case encompasses the type of statute for which the modified categorical approach is appropriate. The armed violence statute applies whenever a person commits a felony while armed with a dangerous weapon. In order to determine the precise statutory offense, therefore, we need to first identify the underlying felony. Ascertaining the underlying felony merely identifies the precise offense, but does not involve the court in examination of the actual conduct of the defendant in the offense. Fife's assertion that we are limited to the language of the statute without consideration of the felony involved is inconsistent with our cases concerning the modified categorical approach. By defining the crime of armed violence as the commission of a felony while armed with a dangerous weapon, the statute necessarily establishes multiple modes of commission of the crime, dependent upon the underlying felony. There is no need that each potential felony be explicitly listed and separately enumerated as a subsection, because the practical effect is the same. In either scenario, it is a divisible statute not because each subcategory is separately listed, but because by its terms it creates several crimes or a single crime with several modes of commission. *Woods*, 576 F.3d at 406, 411 ("[I]t does not matter whether the earlier statute placed the statutory phrase in its own subsection, or if it merely made it part of a list. The point is that the statute itself is "divisible"—that is, it expressly identifies several ways in which a violation may occur.").

Thus, in *Dismuke*, 593 F.3d at 590, we considered Wisconsin's vehicular fleeing statute, and held that the modi-

fied categorical approach was appropriate because it defined more than one category of vehicular fleeing even though those categories were not separately numbered. The statute in *Dismuke* provided:

> No operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle, shall knowingly flee or attempt to elude any traffic officer by willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians, nor shall the operator increase the speed of the operator's vehicle or extinguish the lights of the vehicle in an attempt to elude or flee.

Wis. Stat. § 346.04(3) (2000); *Dismuke*, 593 F.3d at 590. The statute did not create separate subsections delineating multiple offenses, but we held that by its language it clearly set forth multiple categories of vehicular fleeing: first, "fleeing or attempting to elude an officer 'by willful or wanton disregard of [the officer's] signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians.'" and second, "'increas[ing] the speed of the operator's vehicle or extinguish[ing] the lights of the vehicle in an attempt to elude or flee.'" *Id. Dismuke* makes clear that the focus is on the language of the criminal statute itself, not the presence or absence of numbered subdivisions. If the language creates multiple offense categories, then the modified categorical approach is proper. Here, the armed violence offense creates multiple modes of commission,

defined by the felony committed while armed with a dangerous weapon. Each distinct felony is a separate mode of committing armed violence. Therefore, we may examine underlying documents to determine the precise offense committed—specifically, to determine which felony Fife committed while possessing a weapon.

Although Fife questions in a footnote the government's contention that Fife pled guilty to delivery of a controlled substance as the underlying felony for the armed violence conviction, Fife does not pursue that argument in his brief and at oral argument his counsel acknowledged that the underlying felony was possession with intent to deliver cocaine. Therefore, under the modified categorical approach, we consider whether a conviction for possession with intent to deliver cocaine while armed with a dangerous weapon is a violent felony under the ACCA.

B.

The offense of armed violence does not have as an element the use or threatened use of physical force, nor is it one of the enumerated offenses in the ACCA definition of violent offense, and therefore we must consider whether it falls within the residual clause of the ACCA as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *See* 18 U.S.C. § 924(e)(2)(B)(ii). In order for an offense to constitute a violent felony under the residual clause of the ACCA, it must "(1) present a serious potential risk of physical injury similar in degree to the enumerated

crimes of burglary, arson, extortion, or crimes involving the use of explosives; and (2) involve the same or similar kind of 'purposeful, violent, and aggressive' conduct as the enumerated crimes." *Dismuke*, 593 F.3d at 591.

### 1.

There is no doubt, nor is it seriously contested, that the possession of cocaine with intent to deliver while armed with a weapon presents a serious potential risk of physical injury similar in degree to the enumerated crimes. The association between drug dealing and weapons, and the corresponding violence inexorably linked to the drug trade, is well-documented in our opinions. Evidence of weapons, particularly firearms, and violent acts have repeatedly been allowed in trials involving drug conspiracy charges, because weapons are "tools of the drug trade" and the courts have recognized the indisputable fact that violence is endemic to the trade in drugs. *See, e.g.*, *United States v. Williams*, 81 F.3d 1434, 1437 (7th Cir. 1996) (noting that El Rukn gang members "committed many murders, and engaged in much other violence, in the turf wars that are endemic to the trade in illegal drugs."); *United States v. Martinez*, 938 F.2d 1078, 1083-84 (10th Cir. 1991) (recognizing that a high level of violence is not uncommon in the drug distribution business and "weapons are often viewed as necessary tools to facilitate it."); *United States v. Thompson*, 286 F.3d 950, 969 (7th Cir. 2002) (allowing evidence of several shootings and an alleged kidnapping as intricately

related to the drug conspiracy charge because it demonstrates how the conspiracy conducted its business); *United States v. Ramirez*, 45 F.3d 1096, 1103 (7th Cir. 1995) (admitting evidence of a pistol found at the defendant's apartment because weapons are the tools of the drug trade). Congress has recognized the connection between drugs and violent crime as well. In 42 U.S.C. § 11901, addressing public housing drug elimination, Congress found that "drug dealers are increasingly imposing a reign of terror on public and other federally assisted low-income housing tenants," and "the increase in drug-related and violent crime not only leads to murders, muggings, and other forms of violence against tenants, but also to a deterioration of the physical environment that requires substantial government expenditures." Given the well-established connection between violent crime and the illegal drug trade, the possession of a weapon while dealing cocaine presents a serious potential risk of physical injury that is certainly similar to, if not substantially greater than, the enumerated crimes of burglary, arson, extortion, or crimes involving the use of explosives.

2.

We turn, then, to the remaining consideration of whether the armed violence offense involves the same or similar kind of purposeful, violent and aggressive conduct as those offenses explicitly named in the ACCA. The Supreme Court recognized that the enumerated offenses in the ACCA typically involved purposeful, violent and aggressive conduct "such that it makes it

more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Begay*, 553 U.S. at 144-45; *Welch*, 604 F.3d at 416. Therefore, in order for an offense to fall within the residual clause, the Court held that the offense must be similar in kind to those enumerated offenses, and specifically must similarly be purposeful, violent and aggressive such that subsequent gun ownership would portend greater danger.

The requirement that an offense be purposeful focuses on the mens rea element. *Dismuke*, 593 F.3d at 592. In order to satisfy this provision, the offense must require, either explicitly or implicitly, knowing or intentional conduct, rather than a lesser mens rea such as recklessness or strict liability. *Welch*, 604 F.3d at 417-18; *United States v. Smith*, 544 F.3d 781, 786 (7th Cir. 2008); *United States v. Spells*, 537 F.3d 743, 752 (7th Cir. 2008); *McDonald*, 592 F.3d at 809. Offenses that rely on a lesser mens rea such as recklessness could sweep within the provision offenses that do not portend a greater threat to potential victims in future gun possession. In contrast, the requirement of knowing or intentional conduct ensures that the ACCA reaches only defendants who purposefully committed offenses that presented a serious risk of physical injury to others and were violent and aggressive in nature. These are the type of defendants for whom subsequent possession of a firearm creates a greater risk that the firearm will be used against a victim. The offense of armed violence for which Fife was convicted required a showing that Fife possessed cocaine with intent to deliver it, and while committing

that felony he knowingly was armed. *See People v. Adams*, 638 N.E.2d 254, 258 (Ill. App. 4 Dist. 1994); *People v. Olson*, 420 N.E.2d 1161, 1163 (Ill. App. 2 Dist. 1981). The knowledge and intent requirements demonstrate the type of purposeful conduct that falls within the ACCA.

The remaining factor that must be met is that the offense must involve a similar kind of violent and aggressive conduct as the enumerated crimes. In order to satisfy this standard, it is not necessary that every conceivable factual offense covered by the statute necessarily presents a serious risk of potential injury. *James v. United States*, 550 U.S. 192, 208 (2007); *Dismuke,* 593 F.3d at 594. Instead, the proper inquiry is whether the elements of the offense entail conduct that, in the ordinary case, presents a serious risk of potential injury to another. *Id.* The focus remains on the elements of the offense at issue, not the actual conduct of the particular defendant in this case. Therefore, offenses involving forms of inaction, such as escape involving failure to report for penal confinement, do not meet the criteria of purposeful and aggressive conduct, because one who fails to report is unlikely to call attention to herself by simultaneously engaging in violent and unlawful conduct. *Chambers*, 129 S. Ct. at 691-92; *see also Welch*, 604 F.3d at 424 and *Dismuke*, 593 F.3d at 595-96. In contrast, escape or fleeing an officer, when encompassing by its language active rather than passive conduct, has been held to be a violent offense under the ACCA. *Dismuke*, 593 F.3d at 595-96; *Sykes*, 598 F.3d at 336-37; *Welch*, 604 F.3d at 424; *Spells*, 537 F.3d at 752. The offense of possession of cocaine with the intent to distribute while

armed has a much greater potential for violence than the active escape cases noted above. As was discussed earlier, there is an unmistakable connection between the illegal drug trade and violence, that in the ordinary case presents a serious *risk* of potential injury—which is all that is required under the ACCA. *See Williams*, 81 F.3d at 1437; *Martinez*, 938 F.2d at 1083-84; *Thompson*, 286 F.3d at 969; *Ramirez*, 45 F.3d at 1103; 42 U.S.C. § 11901. Because the armed violence conviction in this case "by its nature, presents a serious potential risk of injury to another," it satisfies the requirements of the ACCA. *See James*, 550 U.S. at 209. Accordingly, the Illinois armed violence conviction is a violent offense under the ACCA. Combined with the two other violent offenses in his criminal history, the armed violence conviction renders Fife an armed career criminal under the ACCA. The decision of the district court is REVERSED and the case REMANDED for resentencing consistent with this opinion.