In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3788

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CARL T. MILLER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:11-cr-00023-RTR-1—**Rudolph T. Randa**, *Judge.*

ARGUED MAY 29, 2012—DECIDED JUNE 27, 2013

Before WOOD, SYKES, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* When Carl T. Miller pleaded guilty to being a felon in possession of a firearm in 2011, the government contended that three of his prior convictions qualified as "violent felonies" requiring a mandatory minimum 15-year sentence under the Armed Career Criminal Act (ACCA). *See* 18 U.S.C. § 924(e)(1). Miller did not dispute that his two burglary convictions qualified as violent felonies but he objected to the third

prior offense—possession of a short-barreled shotgun in violation of Wisconsin law. The objection required the district court to construe the meaning of ACCA's "residual clause."[1] The district court denied the objection because our decision in *United States v. Upton* held that an indistinguishable Illinois offense qualified as an ACCA residual clause violent felony. 512 F.3d 394, 404 (7th Cir. 2008). Miller argues that post-*Upton* Supreme Court decisions construing the residual clause require a different result. We agree that although ACCA remains unchanged since *Upton*, if nothing else, the approach for evaluating prior convictions under ACCA's residual clause has changed. *See United States v. Jones*, 689 F.3d 696, 699 (7th Cir. 2012) (ACCA's "residual clause has eluded stable construction"), *cert. denied*, 133 S. Ct. 895 (2013). Accordingly, whether the mere possession of a short-barreled shotgun qualifies as a violent felony under ACCA deserves careful reconsideration, and in doing so, we find that Miller is correct; mere possession of a

---

[1] The relevant portion of ACCA defines "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> > . . .
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, **or *otherwise involves conduct that presents a serious potential risk of physical injury to another* . . . .**

18 U.S.C. § 924(e)(2)(B) (emphasis supplied to what will be referred to throughout this opinion as the "residual clause").

short-barreled shotgun is not a violent felony for purposes of ACCA.

Miller and the government agree that in order for his conviction for possession of a short-barreled shotgun in violation of Wisconsin Statute § 941.28(2) to qualify as an ACCA violent felony, it must do so under the residual clause. To determine whether a conviction fits within the residual clause, we apply a categorical approach by examining the offense's statutory elements as opposed to a defendant's actual conduct. *See United States v. Fife*, 624 F.3d 441, 445 (7th Cir. 2010). The relevant text of the statute reads: "No person may . . . possess . . . a short-barreled shotgun or short-barreled rifle." Wis. Stat. § 941.28(2).[2] We review de novo, *see Fife*, 624 F.3d at 445, and consider the offense as it ordinarily is committed, not trying to imagine whether in some unusual situations it could be committed in ways that pose more, or less, serious potential for risk of injury to another, *see James v. United States*, 550 U.S. 192, 207-09 (2007).

---

[2]  The full text reads:

> No person may sell or offer to sell, transport, purchase, possess or go armed with a short-barreled shotgun or short-barreled rifle.

Wis. Stat. § 941.28(2). Although the law can be violated in several ways, some of which may pose more potential risk of injury than others, the parties agree that Miller's conviction was for simple possession of a short-barreled shotgun, so we do not need to address divisibility. *See Fife*, 624 F.3d at 445-46.

The Supreme Court has addressed the residual clause four times in a recent five-year period.[3] Perhaps no single statutory clause has ever received more frequent Supreme Court attention in such a short period of time or such a proliferation of lower court reaction. Although Congress has done nothing to add clarity to ACCA's residual clause, cases decided after *Upton* direct us to a different understanding of how to apply the residual clause.

We start with *Begay v. United States*, decided a few months after *Upton*, in which the Court considered whether driving under the influence of alcohol (DUI) was a violent felony under the residual clause. 553 U.S. 137, 141 (2008). The Court found that the listed examples, "burglary, arson, extortion, or crimes involving the use of explosives," illustrated the types of crimes that fell within the law's scope and indicated "that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Id.* at 142 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). The Court reasoned that the enumerated crimes limited residual clause offenses to those "that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* at 143. And DUI differed from burglary, arson, extortion, and crimes involving the use of explosives in one pertinent and important respect: the absence of "purposeful, violent, and aggressive conduct." *Id.* at 145. DUI com-

---

[3] A concise synopsis of the Court's recent treatments of the residual clause is found at *Jones*, 689 F.3d at 700, n.1.

pared closely to crimes imposing strict liability (or perhaps those involving negligence or recklessness), whereas the listed crimes revealed "a degree of callousness toward risk" and "an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." *Id.* at 146. In the end, the Court concluded that DUI was so "unlike the provision's listed examples" that Congress could not have intended the residual clause to cover it. *Id.* at 142.

Upon the issuance of *Begay*, we began to understand residual-clause crimes to be those that "(1) present a serious potential risk of physical injury similar in degree to the enumerated crimes of burglary, arson, extortion, or crimes involving the use of explosives; and (2) involve the same or similar kind of 'purposeful, violent, and aggressive' conduct as the enumerated crimes." *Fife*, 624 F.3d at 447 (quoting *United States v. Dismuke*, 593 F.3d 582, 591 (7th Cir. 2010)).

But shortly thereafter, *Sykes v. United States* deemed *Begay's* "purposeful, violent, and aggressive" language to be redundant of the risk inquiry required by the residual clause, concluding that these adjectives served merely as a useful way to explain that the crime in *Begay* was akin to strict liability, negligence, and recklessness crimes. *See* 131 S. Ct. 2267, 2275-76 (2011). Instead, the predicate conviction's level of risk generally serves as the dispositive factor, *id.* at 2275, but the enumerated crimes—burglary, extortion, arson, and crimes involving use of explosives—still "provide guidance in" determining whether an offense presents a serious risk of physical injury to another, *id.* at 2273. The

Court then determined that Indiana's prohibition on flight from an officer by vehicle fit within the residual clause because the inherent nature of the offense includes an indifference to the safety of property and persons; one "who takes flight and creates a risk of [a potentially violent and even lethal] dimension takes action similar in degree of danger to that involved in arson, which also entails intentional release of a destructive force dangerous to others." *Id.* "Burglary is dangerous because it can end in confrontation leading to violence," which was true "but to an even greater degree" with fleeing police by vehicle. *Id.* (citing in part *James*, 550 U.S. at 200). As it did in *Chambers v. United States*, 555 U.S. 122, 129 (2009), decided a year after *Begay*, the Court in *Sykes* also considered statistical data (although noting that such data is not dispositive), ultimately concluding that the risks posed by fleeing police by vehicle may exceed those of burglary and arson. 131 S. Ct. at 2274-75.

So, following *Sykes*, the question for us in this case is whether the risk posed by the possession of a short-barreled shotgun constitutes a serious risk of injury to another, using the offenses enumerated in § 924(e)(2)(B)(ii) as guides to evaluate the nature and degree of that risk. *See Sykes*, 131 S. Ct. at 2273. The concerns discussed in *Begay*—that the crime be "purposeful, violent, and aggressive"—are not present here because, as explained in *Sykes*, those terms simply explained why a crime akin to strict liability, negligence, or recklessness crimes does not fit within the residual clause. But criminal possession requires knowledge in Wis-

consin, *State v. Christel*, 211 N.W.2d 801, 809 (Wis. 1973), *disapproved of on other grounds in State v. Poellinger*, 451 N.W.2d 752, 757 & n.5 (Wis. 1990); *see also Doscher v. State*, 214 N.W. 359, 360 (Wis. 1927) (finding contraband on premises not enough to warrant conviction without showing "conscious possession"); *Schwartz v. State*, 212 N.W. 664, 665 (Wis. 1927) ("Possession signifies some right of dominion or control over the thing possessed."), so that distinguishes this case from *Begay*, and explains why we don't have to go through *Begay*'s "purposeful, violent, and aggressive" analysis, *see Sykes*, 131 S. Ct. at 2275.

We therefore turn to the risk analysis as directed by *Sykes* and ask whether a violation of Wisconsin's short-barreled shotgun possession prohibition, in the ordinary case, presents a serious potential risk of physical injury as guided by the types and degrees of risks presented by the enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives. *Id.* at 2273. A short-barreled shotgun can be possessed in a variety of circumstances, ranging from a situation which is patently violent, for example, when one is used in the course of a robbery, to those in which violence is at best latent, such as when a short-barreled shotgun is hidden away at a home, perhaps even unloaded or disassembled. Wisconsin also recognizes the concept of joint and constructive possession. *E.g., State v. Mercer*, 782 N.W.2d 125, 131 (Wis. App. 2010) (citing *Schmidt v. State*, 253 N.W.2d 204, 208 (Wis. 1977)). But what is the ordinary case of mere possession? We know that we are not simply to imagine the ways in which the statute can be violated with minimal

risk of physical injury to others. *See James*, 550 U.S. at 208. Nor are we to hypothesize dangerous ways in which violations could occur. *See United States v. Hampton*, 675 F.3d 720, 731 (7th Cir. 2012); *United States v. Sonnenberg*, 628 F.3d 361, 365-66 (7th Cir. 2010). Instead, we are to focus on the "generic crime as ordinarily committed—that is, whether *most* instances of the crime present the required degree of risk." *Hampton*, 675 F.3d at 731 (citing *Dismuke*, 593 F.3d at 594).

As noted, in some cases, consideration has been given to statistical data which demonstrates the crime's risk of violence. For example, as explained in *Sykes*, the potential collateral consequences of vehicular flight from an officer placed the risk of harm to other persons above two of the enumerated offenses: for every 100 burglaries, there were 3.2 injuries, and for every 100 arsons, there were 3.3 injuries. 131 S. Ct. at 2274-75. And for every 100 police pursuits, there were just over 4 injuries. *Id.* at 2274. But in this case, the government pointed to no such data, either in the trial court or on appeal, and our function on appellate review is not to create a record.

Looking at the reported Wisconsin decisions, short-barreled shotgun cases often involve a passive possession in which the weapon is not exposed to others. *See State v. Murdock*, 455 N.W.2d 618, 620 (Wis. 1990) (closed pantry drawers), *overruled on other grounds by State v. Dearborn*, 786 N.W.2d 97, 105 (Wis. 2010); *State v. Garrett*, 635 N.W.2d 615, 617 (Wis. Ct. App. 2001) (closet); *State v. Stankus*, 582 N.W.2d 468, 470-71 (Wis. Ct. App. 1998) (locked in truck of a car); *State v. Rardon*, 518 N.W.2d

330, 332 (Wis. Ct. App. 1994) (disassembled); *State v. Johnson*, 491 N.W.2d 110, 112 (Wis. Ct. App. 1992) (missing firing pin). In these cases, the firearm poses no immediate risk to anyone but can still serve as a factual basis for a conviction. The range of conduct which could constitute knowing possession of a short-barreled shotgun can vary on a scale of risk of danger to others, but the mere possession of a weapon doesn't have to involve any risk. For example, brandishing the weapon, loading it, or actually pulling the trigger are all highly dangerous activities. But those separate actions go beyond the mere possession of the weapon. Something as simple as stuffing a short-barreled shot-gun (regardless of whether loaded or even assembled) under a mattress, a relatively passive and not inherently violent act, is all it takes to violate Wisconsin's law against possessing short-barreled shotguns.

This leads us to conclude that the risk of physical injury to another presented by the mere possession of a short-barreled shotgun is not in the same league as the risks presented by the offenses of burglary, arson, extortion, or crimes involving the use of explosives. One can imagine scenarios in which the mere possession of such a weapon poses a risk of harm to others, *e.g.*, if the possession took place in a public place and was visible to others, such as in a bank. But just as our task is not a search for a hypothetical way in which a violent crime can be committed without risky behavior, *James*, 550 U.S. at 208, we are not to speculate about how a crime can be committed in a risky manner. Instead, we

are to look at the conduct required by the statute, that is, the ordinary manner of violating the law. And in the ordinary case, the possession of a short-barreled shotgun does not create any potential risks of harm to another person because all that is involved is the knowing possession of a weapon. As explained in *Sykes*, the potential collateral consequences of vehicular flight placed the risk of harm to other persons above burglary and arsons. 131 S. Ct. at 2274-75. But the potential collateral consequences of simple possession of a short-barreled shotgun are much harder to imagine. Even though a short-barreled shotgun is quite dangerous, its real risks will almost always manifest only when used or carried in a manner causing others to react. *Cf. Chambers*, 555 U.S. at 128-29 (crime of "failure to report" involves the offender "doing *something*" but "there is no reason to believe that the *something* poses a serious potential risk of physical injury"); *United States v. Sims*, 683 F.3d 815, 817 (7th Cir.) (possession crimes are typically passive offenses), *cert. denied*, 133 S. Ct. 802 (2012).

We recognize that possession of a short-barreled shotgun suggests that the possessor might take a step, if presented with the chance, toward using it with its advantages of enhanced ability to conceal and wide spread of shot. *See Upton*, 512 F.3d at 404; *see also United States v. Vincent*, 575 F.3d 820, 826 (8th Cir. 2009) (citing *Upton*). There is also the risk that brandishing such an infamous firearm may prompt a dangerous response from others. But the crime of simple possession does not include any of this behavior as an inherent aspect of the offense. Missing is the action present in the enumerated

§ 924(e)(2)(B)(ii) crimes, as vividly explained in *Sykes* in the crime of flight from an officer by vehicle. 131 S. Ct. at 2274 (involving "confrontations that initiate and terminate the incident," and the demand for pursuit with "high risks of crashes" followed by a "serious potential risks of physical injury to others"). Similarly in *James*, the crime of attempted burglary qualified as a violent felony not because "the simple physical act of wrongfully entering onto another's property" carried some risk, but because of the "main risk" from a possible "face-to-face confrontation between the burglar and a third party." 550 U.S. at 203-04.

Mere possession of a weapon has nothing in common with the risk-creating aspects of the listed crimes. Arson involves the unleashing of a dangerous force which may be intended only to damage physical structures, but which may harm individuals, such as responders, as a result. Extortion implicates the threat of a harm to others if demands are not met, as well as the great potential for a reaction to the threat, perhaps like the potential reaction to flight from law enforcement, which can result in a tragic confrontation. And like arson, the use of explosives unleashes an uncontrollable force that poses a high risk of harming those in its path or responding to its consequences. Perhaps the use of explosives is the closest analogue to the possession of a dangerous weapon; but it isn't very close at all. A closer comparison would be an offense involving possession of explosives, but ACCA only lists crimes that involve the use of such dangerous materials, not the inert act of possessing them. *See* 18 U.S.C. § 924(e)(2)(B)(ii); *United*

*States v. McGill*, 618 F.3d 1273, 1277 (11th Cir. 2010) (per curiam) ("Congress included only the *use*, but not the *possession of*, explosives among the ACCA's example crimes."). Of course, if a short-barreled shotgun is assembled, loaded, and fired, the similarity to using explosives is closer. But the mere possession of the gun does not inherently pose those risks.

The government maintains that a short-barreled shotgun is a "weapon of personal confrontation" because it is "less likely to be carried defensively" and is "possessed for offensive purposes." But while these enhanced risks may compare to the risk levels associated with the mere possession of a hunting rifle or handgun, they do not compare to the risks posed by the conduct underlying burglary, arson, extortion, and offenses involving the use of explosives. We do not doubt that a short-barreled shotgun may inherently be a more dangerous weapon than an ordinary rifle or handgun, but until the short-barreled shotgun is exposed or revealed to others, the type of danger existing in the listed crimes is not present. It is only manifested when the weapon is brought out from under the mattress or out of the closet or trunk.

Unlike past cases, *e.g.*, *Hampton*, 675 F.3d at 730 (rejecting report on assaults causing officer injury), the government does not support its position with statistics. Instead, it points to the Application Notes for the career offender provision in the Sentencing Guidelines, which includes unlawful possession of a sawed-off shotgun in its examples of crimes of violence, U.S.S.G. § 4B1.2, Ap-

plication Notes, and our past practice of treating the Guidelines' definition of "crime of violence" as interchangeable with the ACCA definition of "violent felony," *e.g.*, *United States v. Rosas*, 410 F.3d 332, 335-36 (7th Cir. 2005) (per curiam). We recently held that the Application Note's instruction that inchoate offenses such as conspiracy are crimes of violence when the underlying crime is a crime of violence is dispositive for purposes of the Guidelines, even if the result is different under nearly identical language in ACCA. *United States v. Raupp*, 677 F.3d 756, 758-61 (7th Cir.), *cert. denied*, 133 S. Ct. 610 (2012).

What weight, if any, the Guidelines' Application Notes should be given in interpreting criminal statutes is an interesting question in general, but a close examination of the Application Notes relevant in this case reveals that relying on those notes to decide this case would place us on shaky ground. The Commission added the possession of a sawed-off shotgun as a "crime of violence" in 2004 (before *James*, *Begay*, *Chambers* and *Sykes* were decided) because of (1) Congress's determination in the National Firearms Act, *see* 26 U.S.C. § 5845(a), that such weapons "are inherently dangerous and when possessed unlawfully serve only violent purposes" and (2) a number of courts had found that possessing these types of weapons presents a serious potential risk of physical injury to another. *See* U.S.S.G. § 4B1.2, 2004 Amendments. As explained above, how courts look at ACCA's residual clause has changed since this amendment. Although Congress quite rightly found that such weapons serve no legitimate purpose, *see* Conf. Rep. No.

90-1956, *reprinted in* 1968 U.S.C.C.A.N. 4426, 4434 (1968) ("National Firearms Act covers gangster-type weapons such as machineguns, sawed-off shotguns, short-barreled rifles, mufflers, and silencers."); Harry Henderson, *Gun Control* 17 (2005) (Congress imposed in 1934 a $200 tax on sawed-off shotguns because their shortness allowed for easy concealment making them particularly useful to criminals), that doesn't mean that their mere possession presents a degree or type of risk of violence comparable to burglary, arson, extortion, or crimes involving the use of explosives. So even if Miller's conviction for possessing a short-barreled shotgun qualified as a crime of violence under the Guidelines, it does not lend support to interpreting ACCA's statutory text in a similar manner.

Before *Sykes*, *Upton* held that possession of a sawed-off shotgun in violation of an Illinois law[4] constituted a violent felony under ACCA's residual clause. We reached that conclusion primarily because we had already determined that such possession was a "crime of violence" for purposes of the Guidelines. 512 F.3d at 404 (citing *United States v. Brazeau*, 237 F.3d 842, 844 (7th Cir. 2001)). In reaching that result, we noted that possession of a sawed-off shotgun poses a serious potential risk

---

[4] "A person commits the offense of unlawful use of weapons when he knowingly . . . possesses . . . a shotgun having one or more barrels less than 18 inches in length or any weapon made from a . . . shotgun . . . if such a weapon as modified has an overall length of less than 26 inches." 720 ILCS 5/24-1(a)(7)(ii) (2007).

of physical injury because of the illegitimate purposes for which people use such firearms:

> People do not shorten their shotguns to hunt or shoot skeet. Instead, the shortened barrel makes the guns easier to conceal and increases the spread of the shot when firing at close range— facts that spurred Congress to require the registration of all sawed-off shotguns, along with other dangerous weapons like bazookas, mortars, pipe bombs, and machine guns.

*Id.* This view of sawed-off shotguns is sensible and we are not changing that general view here. But given the development in the framework for evaluating whether an offense qualifies for the residual clause, this recognition of the inherent aspects of a short-barreled shotgun is no longer sufficient. *Upton*, unaided by prescience of the subsequent line of Supreme Court ACCA cases discussed above, did not address whether the risks posed by the mere possession of a sawed-off shotgun were comparable to the listed offenses.

But even more recently, the Eighth Circuit in *United States v. Vincent* found that the crime of possession of a sawed-off shotgun was a violent felony under ACCA's residual clause because "it enables violence or the threat of violence" and makes it more likely that the offender will later use that weapon to harm someone. 575 F.3d at 826; *see also United States v. Lillard*, 685 F.3d 773, 777 (8th Cir. 2012) (reaffirming *Vincent*) *Vincent* also relied on the commentary to U.S.S.G. § 4B1.2(a) as persuasive authority. *Vincent* considered "whether possession of a

sawed-off shotgun is roughly similar, in kind as well as degree of risk posed, to the offenses [in the residual clause]—burglary, arson, extortion, and the *use* of explosives." 575 F.3d at 826 (emphasis added). It likened a sawed-off shotgun to explosives: "Like explosives, a sawed-off shotgun can inflict indiscriminate carnage." *Id.* True enough, but the residual clause doesn't make *possession* of explosives a "violent felony." *See* 18 U.S.C. § 924(e)(2)(B)(ii); *McGill*, 618 F.3d at 1277 ("Congress included only the *use*, but not the *possession of*, explosives among the ACCA's example crimes."). We do not disagree with *Vincent*'s discussion of the sawed-off shotgun's ability to enable violence and that the possession of such a weapon makes it more likely that the offender will later use it. We simply don't think that the latent risks inherent in the offense of possessing a short-barreled shotgun are sufficient to qualify for the residual clause when the crimes from which we are instructed to guide our determination—burglary, arson, extortion, and crimes involving the *use* of explosives—all are inherently risky without that extra step required for the risk to manifest.[5]

Our holding is consistent with *McGill's* ultimate conclusion, 618 F.3d at 1277-79 (possession of a short-

---

[5] The First Circuit also has held that possession of a sawed-off shotgun is a violent felony under ACCA's residual clause, *see United States v. Fortes* 141 F.3d 1, 6-8 (1st Cir. 1998), relying, like the Eighth Circuit, on the weapon's inherent dangerousness and lack of lawful use. Our disagreement with *Vincent*'s reasoning applies to the *Fortes* decision as well.

barreled shotgun is not a violent felony under ACCA because it is not "similar in kind" to the "'use of explosives" or to the other crimes listed in ACCA's residual clause), and with *United States v. Amos*, 501 F.3d 524, 528-30 (6th Cir. 2007) (holding that possession of a sawed-off shotgun is not a violent felony under ACCA because "possession does not fit well with the more active crimes included in the statute" and not all instances of sawed-off shotgun possession pose a risk of violence),[6] which were decided without the benefit of *Sykes*. We note, however, our disagreement with *McGill*'s assessment of the risk posed by possession of a short-barreled shotgun, *see* 618 F.3d at 1276 (such possession "presents a serious potential risk of physical injury to another"), and our agreement with *Amos*'s conclusion regarding that risk, *see* 501 F.3d at 528-29 (noting a distinction between crimes that carry "future risks of violence" and crimes that carry "risk of violence"). Because we hold that the developments in this area of the law

---

[6] The Fourth Circuit initially found possession of a weapon of mass destruction a violent felony, but after the Supreme Court remanded in light of *Begay*, the court did a quick about-face. *United States v. Haste*, 292 F. App'x 249, 250 (4th Cir. 2008) (per curiam). *United States v. Crampton* also held that possession of an unregistered short-barreled shotgun is an ACCA violent felony, 519 F.3d 893, 898 (9th Cir. 2008), but the Court also vacated and remanded that case in light of *Begay* and *Chambers*, *see* 555 U.S. 1133 (2009), and no subsequent decision has been reported.

require a different result than the one reached in *Upton*,[7] it is unnecessary to address Miller's constitutional arguments.

We VACATE Miller's sentence and REMAND for resentencing.

---

[7] This opinion has been circulated among all judges of this court in regular active service pursuant to Cir. R. 40(e). No judge favored a rehearing en banc on the question of overruling the relevant portion of *Upton*, 512 F.3d at 404.